(89 South. 449)
**HENDRIX v. FOUNTAIN, Judge et al.**
**(1 Div. 198.)**

(Supreme Court of Alabama. May 12, 1921.)

1. **Counties** ⬤⟞165—School fund held not part of county revenue within statute limiting outstanding warrants.

A school fund was not a part of the county revenue under Acts Sp. Sess. 1920, p. 10, § 3, providing that interest-bearing warrants should not be outstanding in excess of 40 per cent. of estimated revenues of the county, such fund not being handled by county officers intrusted with the duty of looking after the financial affairs of the county.

2. **Counties** ⬤⟞165—Interest-bearing warrants for which special fund created not considered in determining amount issuable.

Interest-bearing warrants theretofore issued for which a special fund was already provided or created are not to be considered when determining whether or not interest-bearing warrants outstanding exceed 40 per cent. of the county revenue, under Acts Sp. Sess. 1920, p. 10, § 3.

Appeal from Circuit Court, Monroe County; John D. Leigh, Judge.

Bill by L. L. Hendrix, as a citizen and taxpayer of the county, to restrain M. M. Fountain, Judge of Probate, and Board of Revenue of Monroe county from issuing certain interest-bearing county warrants. From a decree dismissing the bill, complainant appeals. Affirmed.

Appellant, a taxpayer of Monroe county, filed this bill against appellees as members of the board of revenue of said county, seeking an injunction against the issuance and sale of $75,000 of interest-bearing warrants in settlement of an indebtedness previously incurred, as provided by Acts Sp. Sess. 1920, p. 10. The order of the board of revenue entered upon the minutes is attached as Exhibit A to the bill, and is as follows:

Board of Revenue of Monroe County.
Regular Meeting March 8, 1921.

Whereas, it is made to appear to the board of revenue of Monroe county, that there are a large number of outstanding noninterest-bearing warrants of the county chargeable to or against the general fund of the county, for the payment of which there are no funds in the county treasury at the present time, said war-

rants evidencing an indebtedness of the county approximating seventy-five thousand dollars incurred in the construction and maintenance of public roads or other necessary expenses of the county, or for money borrowed for tick eradication; and

Whereas, it is further made to appear to the said board of revenue from the records of the board and those of the county treasurer that there are no outstanding interest-bearing warrants of the county heretofore issued for which there is no special and ample funds provided or created for their payment, all of such interest-bearing warrants heretofore issued being especially provided for by special funds for their payment as said warrants shall mature, both principal and interest; and

Whereas, it appears to the board advisable, expedient, and desirable for this board to issue and sell interest-bearing warrants of the county for the purpose of securing funds for the payment of the debts and obligations evidenced by said noninterest-bearing warrants, as is provided for by acts of the special session of the Legislature of Alabama, approved September 28, 1920; and

Whereas, it appears to the board of revenue of said county that the total revenues of the county for the year 1920, exclusive of school funds, and funds especially provided and set apart for the payment of all outstanding interest-bearing warrants of the county heretofore issued, amounted to $35,342.49, the total amount of such revenues for the county for said year being $100.699.02; and

Whereas, it is made to appear to the board of revenue from the records of said board, and those of the county treasurer, that the warrants herein authorized to be issued, together with the interest thereon, do not exceed forty per centum of the estimated revenues of the county during the tax year said warrants are payable, and do not exceed forty per centum of the revenue of the county for the preceding year, exclusive of the special funds created and provided for the payment of all outstanding interest-bearing warrants, and also exclusive of the special fund provided for school purposes:

Therefore, in conformity with the provisions of said act, this board now declares its intention to issue such interest-bearing warrants in the sum of seventy-five thousand dollars ($75,000.00) for the purposes herein set out and above set forth. Said warrants shall bear interest at the rate of eight per cent. (8) per annum, interest payable annually, and the principal and interest of said warrants shall be made payable in the amount and at the time set out below in the table incorporated in this order, that is to say:

Table Showing Amount of Interest-Bearing Warrants to be Issued Under This Order, and the Date When Said Warrants Shall Mature.

| Date Payable. | Amt. of Prin. | Int. |
|---|---|---|
| May 1, 1922 | none | $6,000.00 |
| May 1, 1923 | $ 2,000.00 | 6,000.00 |
| May 1, 1924 | 5,000.00 | 5,840.00 |
| May 1, 1925 | 6,000.00 | 5,440.00 |
| May 1, 1926 | 7,000.00 | 4,960.00 |
| May 1, 1927 | 9,000.00 | 4,400.00 |
| May 1, 1928 | 10,000.00 | 3,680.00 |
| May 1, 1929 | 11,000.00 | 2,880.00 |
| May 1, 1930 | 12,000.00 | 2,000.00 |
| May 1, 1931 | 13,000.00 | 1,040.00 |
| Total warrants ordered issued | $75,000.00 | |

It is further ordered by the said board that the following amounts be, and hereby are, set aside out of the general fund of the county to pay said interest bearing warrants, principal and interest as follows.

| For the year 1922 | $ 6,000.00 |
|---|---|
| For the year 1923 | 8,000.00 |
| For the year 1924 | 10,840.00 |
| For the year 1925 | 11,440.00 |
| For the year 1926 | 11,960.00 |
| For the year 1927 | 13,400.00 |
| For the year 1928 | 13,680.00 |
| For the year 1929 | 13,880.00 |
| For the year 1930 | 14,000.00 |
| For the year 1931 | 14,040.00 |

It is further ordered that the above sums of money hereby set aside for the payment of said warrants, principal and interest, is expressly charged with a specific lien for the payment of said sums of money; and the treasurer of the county is hereby ordered to set aside and segregate said specific sums of money out of said general fund in each of said years above specified as directed in this order and in the aforementioned act of the Legislature and to hold the same for the payment of said warrants as directed in said act, which said act is hereby expressly referred to and made a part hereof as if fully set out herein.

It is further ordered by the board that the judge of probate of the county be, and he hereby is, duly authorized to issue said warrants for and in the name of the county, acting therein in all things as required and prescribed by the aforementioned act of the Legislature, and to that end he is empowered and directed to take such steps as may be necessary, at the expense of the county, to procure the printing of said warrants, with interest coupons, and to proceed to sell the same not less than par, and at private sale, at his office in Monroeville, Alabama, on Wednesday June 1, 1921, after advertising the time, place and terms of sale in the Monroe Journal for three successive weeks. The judge of probate in preparing said warrants for issuance shall in all things comply with section five of said act, and, as nearly as possible shall make said warrants of uniform amount and denomination, each warrant to be for as much as two hundred and fifty dollars ($250.00), or more, whenever possible to so arrange the same, in order that the expense and trouble of bookkeeping may be minimized.

It is further ordered that the treasurer shall govern himself strictly by the provisions of section five of said act in respect to the registration, cancellation, etc., of said warrants.

The theory of the bill is that the issuance of these warrants is not authorized by the act, for that, in the event of their issuance, the aggregate amount of warrants outstanding and payable during any tax year will exceed 40 per cent. of the estimated revenues of the county during the preceding year, and during the tax year the warrants are made payable contrary to section 3 of the above-cited act.

Paragraph 3 of the bill is as follows: .

Complainant shows unto your honor that there are now outstanding interest-bearing warrants of the county aggregating $191,282.93, of which $35,935.35 are past due and the re-

maining warrants are payable as follows, to wit:

| Date. | Principal. | Interest. |
|---|---|---|
| April 1, 1921 | $16,101.50 | $11,476.97 |
| April 1, 1922 | 20,165.08 | 10,204.89 |
| April 1, 1923 | 24,421.95 | 8,856.49 |
| April 1, 1924 | 22,699.99 | 7,427.18 |
| April 1, 1925 | 26,119.66 | 5,612.13 |
| April 1, 1926 | 25,166.56 | 4,288.15 |
| April 1, 1927 | 4,924.21 | 2,584.74 |
| April 1, 1928 | no warrants due | 958.91 |
| April 1, 1929 | 15,748.63 | 958.91 |

Complainant further shows unto your honor that the total revenues of the county of Monroe for the year 1920 amounted to $100,699.02 said total sum being composed of the following items:

| | |
|---|---|
| Three-mill school tax | $24,508.70 |
| One-mill school tax | 8,160.56 |
| Paid in by judge of probate | 3,033.00 |
| Paid in by sheriff | 2,971.00 |
| Paid in by circuit clerk | 745.00 |
| Special road and bridge fund | 32,678.27 |
| General fund | 28,593.49 |
| | $100,699.02 |

As will appear from the copy of the said order of said board hereto attached, said board of revenue has ordered the issuance of said warrants in the sum of seventy-five thousand dollars under the supposed authority of the Acts of the Legislature of Alabama, Special Session 1920, page 10. Complainant alleges that said act of the Legislature does not authorize and empower said board of revenue to issue warrants in the amounts and in the manner and form as contemplated by said order of said board, but, on the contrary, said proposed issuance of said warrants is illegal and without authority of law in that said act provides that the aggregate amount of warrants outstanding at the time and payable during any tax year shall not exceed forty per centum of the estimated revenues of the county during the tax year the warrants are payable, and shall not exceed forty per centum of the revenue of the year next preceding the date of issuance. That the interest-bearing warrants outstanding at the time said order was made and entered, together with the interest thereon, added to the warrants proposed to be issued in said order, including interest, thereon, and payable during said specified years, exceeds forty per centum of the revenues of the county for the year 1920, and exceeds forty per centum of the estimated revenues of the county during the tax year the said warrants are made payable, after deducting from the total of said revenues the five-mill school tax amounting to $32,678.26 which should not be considered as revenue as the basis for the issuance of warrants under the act. That unless restrained by order of the court the said Board of Revenue, as shown by said exhibits, will through its president, issue and sell said warrants, although not legally authorized so to do, to the great and irreparable damage of this complainant and the other taxpayers of said county.

Appropriate assignments of demurrer were interposed to the bill, and answer also filed setting up a full compliance with the above-mentioned act, and that, in calculating the amount of warrants authorized to be issued by said act, the board of revenue is not required to consider interest-bearing warrants theretofore issued, for which a special fund has already been provided or created, and that all outstanding interest-bearing warrants, as set forth in the bill, have been theretofore specially provided for by the creation of a special fund ample and sufficient for the payment thereof—both principal and interest. The answer further sets up that in determining the amount of issuance of warrants under the act the total revenues of the county are to be considered, including the school fund, but that even should such school fund be not considered as a part of the revenue of the county for this purpose, and be eliminated from consideration, and also taking out of consideration those interest-bearing warrants, for which a special fund has been created as previously shown, that, in such event, the warrants now proposed to be issued, and payable as shown in the bill, will not exceed 40 per cent. of the remaining revenue, either for the year 1920 or the estimated revenue for the several years in which said warrants are made payable.

There was an agreement in writing of counsel for respective parties filed in the cause, to the effect that the facts set forth in the bill and answer are correct, and that they set up all facts pertinent to the issues involved. It being agreed that the bill and answer set forth all the facts, each being incapable of further amendment, upon submission for final decree thereon, the court rendered a decree dismissing the bill, and this appeal is prosecuted therefrom.

Barnett, Bugg & Lee, of Monroeville (G. W. L. Smith, of Brewton, amicus curiæ), for appellant.

Complainant insists that the interpretation of the act as set out in the bill is correct.

Counsel cites quite a number of authorities bearing on municipal and the like contracts, and their proper construction, with the insistence that the order made by the board of revenue of Monroe county is null and void for failure to follow in all respects the authorities cited.

Hybart & Hare, of Monroeville, for appellees.

The trial court properly interpreted the act, and its decree should be affirmed. 154 Ala. 279, 45 South. 897; Ex parte Lusk, 82 Ala. 519, 2 South. 140. The amicus curiæ has gone out of his way to raise question not in the record. 2 C. J. 1323, 1325; 49 N. E. 797.

GARDNER, J. From the foregoing statement of the case it appears that this appeal involves particularly a construction of sec-

tion 3 of the Acts (Special Session) of 1920, p. 10. That section reads as follows:

"The said order shall recite the amount of interest-bearing warrants then outstanding which are made payable during the tax year within which the warrants then authorized to be issued are made payable, and the aggregate amount of warrants outstanding at any time and payable during any tax year shall not exceed forty per cent. of the estimated revenues of the county during the tax year the warrants are made payable and shall not exceed forty per cent. of the revenues of the year next preceding the date of issue. Provided this shall not apply to interest-bearing warrants heretofore issued by any county and for which a special fund has already been provided or created."

[1] But two questions are presented here for consideration. The first, whether or not the commissioners' court or board of revenue, in computing the amount of warrants to be issued by the above-cited act, should include the four-mill school fund, as shown in the bill and answer, as a part of the revenues of the county. When it is considered that the purpose of this act is to authorize the county authorities therein named to issue interest-bearing warrants in adjustment of the county indebtedness, we are of the opinion that it was the legislative intent, as disclosed by the language of the act, to have as a basis therefor revenues collected for the county and handled by the county authorities. The school fund above mentioned is not used for county purposes, nor is it handled by officers who are intrusted with the duty of looking after the financial affairs of the county. We think this school fund is therefore not to be considered as a part of the county revenues for the purposes of this act. It appears without dispute, however, that, eliminating from consideration as a basis of calculation these school funds, nevertheless the warrants here involved were authorized to be issued, and were within the limitations of said act, provided the interest-bearing warrants heretofore issued, for which a special fund had been created, are eliminated from consideration.

[2] The second question presented for consideration, therefore, is the one more important here, and this question is fully and clearly treated by the learned trial judge in his opinion, which appears in the record. We fully approve of his treatment of this question, and adopt the same, which is as follows:

"The chief contention of the complaint, however, is with respect to the meaning of the proviso in the latter part of said section 3 of said act. He contends that the sentence reading, 'Provided this shall not apply to interest-bearing warrants heretofore issued by any

county and for which a special fund has already been provided. as created,' should be interpreted by the court as if it read as follows: 'Provided that the provisions of this section shall not apply to or invalidate interest-bearing warrants heretofore issued by any county and for which a special fund has already been provided or created.' In other words, complainant contends this proviso is a saving to prevent the courts from declaring previously issued interest-bearing warrants of any county invalid where it is shown that the aggregate amount of such warrants exceeded forty per cent. of the revenues of the county.

"It appears to me that such a construction would be plainly foreign to the intent of the Legislature. The act in question was not passed for the benefit of those counties of the state whose finances were in excellent condition, and which counties would naturally have no occasion to retire large and burdensome debts and obligations. It is common knowledge that many counties of the state were, at the time of the passage of the act, heavily involved in debt for the purpose set out in the act, and that such counties were having much difficulty and embarrassment in meeting and discharging these obligations. It is also common knowledge that many of the counties so indebted had issued interest-bearing warrants in large amounts for road work, etc., for the payment of which they had set aside and pledged the special road and bridge tax.

"It is my opinion that, with this situation in mind, the Legislature enacted the law in question in order that counties so situated might obtain early relief in the payment of their past-due unsecured indebtedness; and for that reason excepted such counties from the forty per cent. limitation in cases where the outstanding interest-bearing warrants were amply provided for by a special fund.

"Aside from the foregoing considerations, the construction contended for is not only strained and unnatural, but would necessarily place the court in the attitude of attributing to the Legislature a vain and useless purpose and intent. Certainly the Legislature knew that by the passage of the act it could not invalidate previously issued valid warrants; that no law could be passed impairing the obligations of contracts.

"The connection in which the proviso is used, the situation and condition of the several counties of the state, the manifest purpose of the act, and the plain language used, all militate against the contention of complainant, and force the court to the conclusion that the construction contended for by respondents is correct."

It appearing, therefore, from the undisputed facts that the board of revenue is acting in compliance with the Acts of Special Session of 1920, p. 10, the bill seeking an injunction was properly dismissed, and the decree will accordingly be held affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.