(108 So. 580)

## RAMAGE, PARKS & CO. v. FOLMAR, County Treasurer, et al. (4 Div. 260.)

(Supreme Court of Alabama. April 15, 1926. Rehearing Denied June 3, 1926.)

**1. Counties ☞100.**

Motion for summary judgment, under Code 1923, § 10265, is maintainable under section 319 against one appointed to act as county treasurer under section 322 and his sureties.

**2. Counties ☞168(3).**

There is element of contract, in view of Code 1923, § 303, subsec. 4, in claim of priority by holders of registered county road warrants, over junior warrants that cannot be overlooked or evaded.

**3. Counties ☞160—County commissioners, having adopted budget for year, held authorized to transfer funds from road fund to general fund to pay interest on bonded debt, if other items of budget were legitimate governmental expenses (Code 1923, § 231, subsec. 6, section 6789; Acts 1923, p. 634, amending Code 1907, § 146, now Code 1923, § 224).**

Where county commissioners adopted budget for year under Code 1923, § 6789, they were authorized, under section 231, subsec. 6, and Acts 1923, p. 634, amending Code 1907, § 146, now Code 1923, § 224, to transfer a named sum from the road fund to the general fund to pay interest on bonded debt and interest coupons falling due throughout the year, if other items shown by the budget witnessed legitimate actual expenses of government.

**4. Counties ☞160—County commissioners held authorized to transfer funds from road fund to the general fund to pay interest on bonded debt (Const. 1901, § 215; Acts 1903, p. 412).**

Where bonded debt of county was incurred to pay for public buildings, bridges, and roads, county commissioners were authorized to apply road fund, derived from tax levied under Const. 1901, § 215, and Acts 1903, p. 412, to pay interest on bonded debt, and to transfer funds from the road fund to the general fund for that purpose.

**5. Counties ☞160—County commissioners held not authorized to transfer from road fund to general fund, to be used in paying interest on bonds antedating statutes, proceeds of gasoline tax, commutation fees in lieu of road work, or vehicle license tax, which are required to be devoted exclusively to maintenance and improvement of roads (Acts 1923, p. 197, § 83; Code 1923, §§ 1363, 1366).**

Moneys collected as gasoline tax under Acts 1923, p. 197, § 83, and revenue from commutation fees in lieu of road work, under Code 1923, § 1363, and license tax on vehicles under section 1366, belongs to the road fund, and, since maintenance and improvement of roads cannot be held to include payment of interest on bonds antedating the acts, county commissioners are unauthorized to transfer proceeds thereof to general fund for that purpose.

**6. Counties ☞168(2)—Where road fund; except for unauthorized transfer of funds to general fund, would be adequate, holders of registered warrants are entitled to payment out of money in hands of acting treasurer.**

Where road fund was ample to pay warrants drawn thereon, except for unauthorized transfer of funds to general fund, holders of registered warrants drawn on road fund are entitled to payment out of funds in hands of acting county treasurer.

Appeal from Circuit Court, Pike County; W. L. Parks, Judge.

Motion for summary judgment by Ramage, Parks & Co. against W. B. Folmar, as County Treasurer of Pike County, and W. B. Folmar & Sons, Bankers, as sureties on official bond. From a judgment for defendants, movant appeals. Reversed and remanded.

A. G. Seay, of Troy, for appellant.

Appellees were subject to the summary proceeding. Hasty v. Marengo County Bank, 206 Ala. 280, 89 So. 433; Citizens' Bank & Sec. Co., v. Commissioners, 209 Ala. 646, 96 So. 778; Code 1923, §§ 319, 322, 10265; Norwood v. Goldsmith, 168 Ala. 224, 53 So. 84. County warrants must be paid in the order of their presentation and registration. Hasty v. Marengo County, 206 Ala. 280, 89 So. 433; Code 1923, § 303(4). The budget system (Acts 1919, p. 722; Code 1923, § 6789) does not authorize the diversion of taxes from the purpose for which they were collected. Rhodes v. Marengo County Bank, 205 Ala. 667, 88 So. 850. The road fund, as constituted, cannot be used for purposes other than building and maintaining roads and bridges. Code 1923, § 1351; Acts 1915, p. 573; Acts 1923, p. 197, § 83; Local Acts 1907, p. 506, §§ 7, 8; Duy v. Ala. West. R. Co., 175 Ala. 162, 57 So. 724, Ann. Cas. 1914C, 1119.

T. L. Borom, of Troy, for appellees.

County depositories are not made subject to the summary remedy. Code 1923, §§ 312–324; Compton v. Marengo County Bank, 203 Ala. 129, 82 So. 159. Appellant's remedy is by mandamus. Hasty v. Marengo County Bank, 206 Ala. 280, 89 So. 433; Code 1923, § 319. The county has authority to adopt a budget system; but, independent of the budget system, the current expenses of the county and preferred claims must be paid in preference to claims registered against the fund. Acts 1919, p. 722; Code 1923, § 6789; Rhodes v. Marengo County Bank, 205 Ala. 667, 88 So. 850; Code 1923, § 231. The cost bill for county convicts and interest on road bonds are preferred claims against the road fund. Code 1923, § 231; Rhodes v. Marengo County Bank, supra; Littlejohn v. Littlejohn, 195 Ala. 614, 71 So. 448.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

SAYRE, J. [1] Motion against W. B. Folmar as county treasurer of Pike county and the sureties on his bond for summary judgment, as provided by section 10265 of the Code of 1923. The office of county treasurer for Pike county was abolished by the act of September 15, 1915 (Laws 1915, p. 348), but the record shows that defendant Folmar was appointed to act as county treasurer under the terms of section 322 of the Code of 1923. The motion was maintainable against defendant Folmar and his bond according to the provisions of section 319 of the Code of 1923, whereby the law, as laid down by a majority of the court in Compton v. Marengo County Bank, 203 Ala. 129, 82 So. 159, was changed.

[2] Movant owned warrants drawn against the general road fund of the county for the sums of $980, $474.62, $2,976.34, $2,610, and $1,689.83, duly registered and numbered respectively as 830, 827, 848, 849, and 863. These warrants were presented for payment February 25, 1925, and again on March 2d, next thereafter, and payment refused by defendant. At that time there remained in the keeping of defendant to the credit of the road fund the sum of $19,447.68, against which there were outstanding prior warrants to the amount of $16,496.97. This, without more, would have required the payment of the first two or three warrants. White v. Mayor, etc., 119 Ala. 483, 23 So. 999. But, further, defendant had paid to holders, other than movant, warrants of later registration than any or all of the warrants presented by movant, aggregating the sum of $18,000 and more, so that, but for defendant's unauthorized preference of junior warrants to that amount (Code 1923, § 303, subsec. 4), he would have been in ample funds to pay all the warrants here in suit. There is an element of contract in movant's claim of priority over junior warrants that cannot be overlooked or evaded, as this court held on good authority in Rhodes v. Marengo County Bank, 205 Ala. 667, 88 So. 850.

[3] Defendant's answer to movant's whole case is that, on January 1st preceding the date of presentation by movant, the court of county commissioners had adopted a budget for the year 1925, showing, among other things, an item of more than $18,000 reserved for the payment of interest on the bonded debt of the county, a copy of which budget had been lodged with defendant, and in this connection defendant showed the court that, if movant's warrants were paid, there would not be funds in his hands sufficient to meet the estimated expenses of the county for the current year. In Rhodes v. Marengo County Bank, 205 Ala. 667, 88 So. 850, we held that, with or without the act of September 25, 1919, section 6789 of the Code of 1923, providing for the budget system of finance, the entire county revenue may be devoted to the payment of current governmental expenses when necessary, and that other claims, though passed and allowed, must be deferred until there is a surplus in the treasury over and above the amount necessary to meet such current expenses. But this contention obviously fails to answer the two propositions heretofore stated, viz.: (1) That, notwithstanding the transfer, in effect, of some $18,000 from the road fund to the general fund, there remained in the road fund enough to pay several of movant's warrants; and (2) that, if there had been no preference of prior warrants, defendant would have been in funds to pay movant for all his warrants, notwithstanding the transfer of funds.

But, further, the propriety of thus in effect transferring funds from the road fund to the general fund of the county is justified by defendant on the ground, if we read the record aright, that such transfer was necessary "to pay the actual expenses of the county as shown by the budget so adopted." Code, § 6789. The budget, in and of itself, accomplished nothing in the way of affecting movant's right to be paid in the order of his warrants after provision made for the payment of the governmental expenses of the county for the current year. But subsection 6 of section 231 of the Code of 1923, prescribing the order of payment among preferred claims against the county, and the act of September 29, 1923, amending section 146 of the Code of 1907, now section 224 of the Code of 1923, are more to the point. Subsection 6, added by the act of September 29, 1923 (Acts, p. 634), provided that—

"Interest on bonds heretofore and hereafter lawfully issued by the county, in the order of their issuance, as evidenced by the interest coupons attached to such bonds or by the bonds themselves. For the payment of the above recited claims, in the order named, it shall be the duty of the county treasurer or custodian of the county funds to set apart a sufficient fund from the monies of the county and he and his official bond shall be held liable for a failure so to do, in so far as the funds of the county make it possible for him so to do."

And section 224 provides that—

"The court of county commissioners must, in term time, audit all claims against their respective counties; and every claim, or such part thereof as is allowed, must be registered in a book kept for that purpose; and the judge of probate must give the claimant a warrant on the treasury for the amount so allowed; but bonds and interest coupons evidencing interest on such bonds, lawfully issued by the county, shall not be required to be registered or to be proved, nor shall warrants be required to issue therefor, but in addition to all other privileges, shall be held to enjoy all the privileges of registered warrants from the date of their lawful issue, and shall be held to be allowed claims from the date of their lawful issue."

This statute law, if there were no other of immediate bearing on the question at issue, would justify the transfer of the fund of

$18,000 or more to the general fund in order to meet the payments required by the interest coupons falling due during the year, if, as we think should be conceded, the other items of charge shown by the budget witness legitimate actual expenses of the county government for the year.

[4] Movant insists that no part of the road fund could be lawfully transferred to the general fund. The road fund was derived from a tax of one-fourth of 1 per centum levied and collected under section 215 of the Constitution of 1901, to be appropriated, in the language of the Constitution, "to pay any debt or liability * * * that may hereafter," that is, after the adoption of the Constitution, "be created for the erection of necessary public buildings, bridges or roads, any county may levy and collect such special taxes, not to exceed one-fourth of one per centum, as * * * may hereafter be authorized by law [Acts 1903, p. 412], which taxes so levied and collected shall be applied exclusively to the purposes for which the same were so levied and collected." The bonded debt of the county—some of it dating as far back as 1905, and all of it incurred to pay for public buildings, bridges, and roads, though some of it appears to have been diverted to other purposes—was secured, principal and interest, by a pledge of "the full faith, credit, and resources of the county." The above-quoted provision of the Constitution warranted, indeed, required, the application of the funds derived from the tax of one-fourth of 1 per centum authorized by section 215 to the payment of interest on the bonded debt of the county.

[5] But moneys collected from other sources go into the road fund. There is the allotment to the county of its share of the gasoline tax. By the act levying this tax it was provided "that all the funds derived by the several counties from said tax shall be expended exclusively for maintenance and repair of roads, highways and bridges in said counties" (Acts 1923, § 83, p. 197), and their expenditure for any other purpose was made a misdemeanor. This, we take it, excludes the expenditure of the gasoline fund in payment of interest on bonds. This act was passed at the same session of the Legislature as the act amending section 146 of the Code of 1907 (section 224 of the Code of 1923); there is no necessary conflict between them; and we presume no conflict was intended. There is also the revenue from commutation fees in lieu of road work. As to it the provision is that—

"Said money to go into the road fund of said county, and be appropriated exclusively for the maintenance or improvement of the public roads of such county." Code 1923, § 1363.

The language of the act from which section 1363 was codified was:

"That the commissioners court * * * shall apply the per capita tax collected in lieu of labor, in the road precinct and on the road where the payer is apportioned or resides." Acts 1919, p. 192.

In these circumstances maintenance and improvement cannot be held to include the payment of interest on bonds antedating the several acts to which we have referred, or, for that matter, interest on any bonds. Then there is the license tax on vehicles, dating from 1915, specifically appropriated (Code 1923, § 1366); but whether such tax is levied in Pike county we are not informed. But whether the transfer, for practical purposes, of the sum of $18,000 and more from the road fund to the general fund operated to transfer any, or, if any, how much, of the road fund to the general fund in violation of law, the record affords no means of ascertaining.

[6] Movant sold its goods, wares, and merchandise to the county for use in constructing or repairing roads, and accepted warrants drawn against the road fund, registered in 1923 and 1924, with the agreement implied by law that they would be paid in the order of their registration. They were, therefore, due to be paid out of funds in the hands of defendant at the time of presentation. In order that further proceedings may be had in agreement with this opinion, the judgment is reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.