(121 So. 504)

**RAMAGE, PARKS & CO. v. FOLMAR, County Treasurer, et al. (4 Div. 350.)**

Supreme Court of Alabama. March 28, 1929.

T. L. Borom and John H. Wilkerson, both of Troy, for appellees.

A. G. Seay, of Troy, for appellants.

144

THOMAS, J. A former appeal is reported as Ramage, Parks & Co. v. Folmar, 214 Ala. 661, 108 So. 580. The proceeding was in accordance with the provisions of the statute. Section 10265, Code.

This appeal presents for decision the rulings on admission of evidence and the rendition of the judgment; the overruling of appellant's motion for summary judgment, as provided by section 10265, of the Code, against an acting county treasurer, under sections 319 and 322 of the Code.

The item of interest from time fixed for payment and damages of 10 per cent. and costs are also sought to be collected, for failure to pay over moneys of the county alleged to be due and withheld after due demand for payment. Section 10266, Code.

Some of the warrants in question, on which movant predicates this motion, were discussed on the former appeal. 214 Ala. 661, 108 So. 580. After the reversal of the cause, the warrants were again presented and refused payment by the defendant acting as county treasurer or disbursing agent for county funds. Among other things, it is averred in the motion "that at each of the said times when said warrants were so presented, there were funds in the treasury to pay the same and that said treasurer failed on such demand and without good excuse to pay the said warrants or any one of them." The condition of the county's finances pertinent to the issues presented in the motion is denied, and it is averred, by way of answer (1) that there were no funds in the county treasury in excess of the necessary moneys for the payment of the "current expenses of the county for the year"; (2) in excess of that required "for the payment of preferred claims against the county," and that the warrants of movants were "not preferred claims"; (3) that "on the 1st day of January, 1925, the Judge of Probate of said county served upon W. B. Folmar, Treasurer of said county, a written notice, or budget, of the expenses · of said county for the year 1925, which are preferred· claims against said county, requiring him to hold said sums necessary for the payment of said preferred claims, said notice or budget being hereto attached, marked Exhibit 'A,' and made a part of this answer, * * * and that there were no moneys in the treasury of said county at the time the warrants of the plaintiffs were presented for payment in excess of the moneys necessary for the payment of said · preferred claims, sufficient for the claims of the plaintiffs." The answer purports to set out the financial status of the county and its general fund at the time said warrants were presented; avers at the· time the warrants of the plaintiffs were presented for payment, that (there) were a large number of claims registered against the fund from which said warrants were payable, which claims were registered prior to the claims of the plaintiffs, and still unpaid, * · * * and there were not sufficient moneys in said fund, at said time, not otherwise appropriated, to pay the claims of the plaintiffs."

In the agreement of counsel it is stated: "That plaintiffs are the owners and in the possession of several warrants described in their motion; that said warrants are valid and proper charges against the general road fund of said county; that they are severally registered against said general road fund of said county and given registration numbers as alleged in said motion; that said warrants were duly presented to the treasurer of said county for payment on the 25th day of February, and again on the 2d day of March, 1925, and that at both times W. B. Folmar, who was at such time treasurer of said county, refused to pay said warrants, or any part of them;" that said defendant was the acting treasurer under the statute, and had so acted from September 15, 1915, the date of appointment; that the budget served on the county treasurer for said year embraced items of cost bills for convicts of $4,000 and interest of $18,130 on the issue of road and bridge bonds. This budget was adverted to on former appeal. A levy of 25 cents on each $100 taxable property was admitted, to be used in the payment on bonds, and the surplus "for constructing and maintenance of the public roads." It is further shown that the county had borrowed and secured by "tax anticipation notes" the sum of $50,800, registered January 7, 1925; the sum of $3,791.60 registered January 7, 1925; and $5,500 registered January 27, 1925; and a last note for $390 registered January 27, 1925. All of said notes were made due and payable on February 1, 1925.

The nature of county warrants, as distinguished from a bond that may be issued under the Constitution (sections 222, 224), was the subject of discussion in Littlejohn v. Littlejohn, 195 Ala. 614, 71 So. 448; Marengo County v. Barley, 209 Ala. 663, 96 So. 753; Kimmons v. Jefferson County Bd. of Education, 204 Ala. 384, 85 So. 774; Stone v. State ex rel. Jett-Muths Const. Co., 204 Ala. 13, 85 So. 443; First Nat'l Bk. of Abbeville v. Terry, Briggs & Co., 203 Ala. 401, 404, 83 So. 170.

The action of the county in making temporary loans in anticipation "of taxes" (from funds with a potential existence that are derived from taxable properties, etc.) for the current year was, from time to time, to be governed and tested by the General Acts of 1915, p. 105, or sections 6776–6788, Code. Troy Nat'l Bk. v. Russell Co. (D. C.) 291 F. 185, 188. The effect of Special Session Acts of 1920, p. 10, was declared in Hendrix v. Fountain, 206 Ala. 65, 89 So. 449; Court of County Com'rs of DeKalb County v. McCartney, 207 Ala. 230, 92 So. 439; Gamble v. Com'rs Court of St. Clair County, 207 Ala. 317, 92 So. 902, and before the adoption of the Code on August 17, 1923, p. 128. The

gasoline excise tax was passed on February 10, and August 22. 1923.

When the Code was considered and the provisions of article 3, §§ 6776–6788, as to "interest bearing warrants of counties," added by the code committee of the Legislature, there was no excise tax. And the terms of the statute, "in anticipation of the collection of taxes for the year," § 6776; "one half of the income from taxation of said county for the preceding year," § 6777; and requiring said warrants to be "registered by the proper authority in said county in the order in which they are issued and the court of county commissioners, board of revenue or other governing body have set aside and apart out of the taxes for the current year a sufficient amount to retire such warrants. Said warrants shall be paid in the order of their registration and entitled to priority of payment out of the proceeds of the taxes of the current year," § 6778—were intended to apply to anticipated incomes from taxable properties for the year, and not to excise or license taxes.

It may be further noted that the answer of the treasurer gives the amount of the registered claims here pertinent, in the aggregate sum of $6,068.05 (not to embrace movant's warrants registered as claim numbers 827 and 828, in the amounts of $474.62 and $980); that the registered claims were in the aggregate of $16,496.92, if made to embrace movant's warrant No. 849 for $2,610 and the amount of registered claims is $27,285.05, if there is included the last claim of movant on which the motion is predicated.

The agreed statement of facts fixed the total amount of registered claims against the county's general fund at $60,645.85.

The classification of the registrations of claims here pertinent should be thus stated:

$ 6,068.05 Total registration prior to first two of movant.
1,454.62 First two of movant's registered claims.
3,396.95 Total registration between first two and second two of movant.
5,586.34 Second two of movant's registered claims.
9,098.46 Total registration between second two of movant and his last one.
1,689.63 Last one of movant's registered claims.

$27,294.05 Balance necessary and available to pay all of movant's warrants.

The financial statement of the county exhibited is that on January 1, 1923, that municipality issued bonds, and the proceeds of the sale thereof were $151,941.60, and credited to the general fund; that the proceeds from the gasoline excise tax were kept separately from the general and other road fund, and were expended for current supplies, machinery, and work for and done on the public roads of the county; and that no part of said fund was or may be used in the payment of registered warrants "against the General Road Fund." The amounts received from the gasoline excise tax fund are recited, but not

being available for payment of such registered claims of the class of which were movant's registered claims, need not be recited. The agreed statement of facts, however, states these several sums as: In general fund $22,888.48, to road fund $13,410, gas excise tax to March 2, 1925, $2,187.36, and to July 1, 1925, $6,698.39, on which date the gas excise tax had been expended pursuant to law.

■ It is here necessary that we consider the one item of rejection of evidence over due exception of appellant. The record recites, as to this:

"The movants then exhibited copy of a warrant drawn on the Treasurer of the County, No. 744, the same being marked Exhibit 'C', which warrant being read is as follows, to wit:

"The State of Alabama, Pike County.
"Commissioners' Court.
"$2526.00          February Term, 1922.
"County Depository of Said County:
"Pay to Ramage, Parks & Company, or Bearer, Twenty-Five Hundred Twenty-Six and no/100......Dollars. For oats—Emergency Fund. Out of the money in the Treasury not otherwise appropriated. Issued February 6, 1922.
"Road Fund                    J. G. Key,
"No. 744.          Judge of Probate."

The proper predicate had been laid for the introduction of a copy of the illegal or unauthorized warrant paid by the treasurer of $2,526, and purporting to have been allowed and paid to Ramage, Parks & Co. on the 6th day of February, 1922. The witness Ramage testified that such warrant was not issued or delivered to his company (the alleged payee therein); that it had or made no such claim against the county; that no such sale of goods or feed stuffs had been delivered or sale made by his company to the county; that he, nor his company, nor any one for it, had ever received, indorsed, or collected from the county depository or treasury said warrant so claimed as a payment by the county depository and charged against the general road fund. Counsel and the court indicated in the record that the ruling in rejecting this evidence (copy of the alleged warrant for $2,526) was not rested on the fact that a copy was offered in evidence rather than the original. It was excluded from evidence on the stated ground that this payment occurred before plaintiff-movant's rights had accrued, "and before he had sold the county anything for which those warrants (the same on which the instant motion is based) were issued"; and that the alleged illegal or unauthorized warrant of $2,526 bore a date of nearly two years preceding movant's asserted registered claims.

It was admitted that the warrant indorsed paid for $2,526 was issued of date of February 6, 1922; and was presented and paid by

the depository or treasurer on February 8, 1922, and was charged by that disbursing officer to the general road fund of the county. We have stated that, as a part of the effort to indicate to the court the relevancy of such depletion of the general road fund, movant asserted that it was not delivered, received, or collected as purported by the indorsement thereon. We shall indicate that such preliminary proof was relevant and proper under the necessities of the case and rules obtaining. General Acts 1927, p. 636. Its effect was to place the burden of going forward with the evidence upon the depository or acting treasurer, to justify, under the law, the payment out of the general road fund of the sum indicated, and to the prejudice of all subsequent legal claims thereon. That is, if $2,526 were illegally paid out of the fund in question, two years before movant's claims accrued, it resulted in a depletion of that fund, affecting movant and the other registered claimants against such fund. That payment, if illegal, and it was, under the undisputed evidence of Ramage, postponed the payment of movant's claims, or some of them, as first and later presented and refused of payment. There was prejudicial error in rejecting said documentary evidence in question, when it was shown relevant by the undisputed evidence of movant.

There must be express warrant of law for all collections and disbursements of the public moneys, and claims not so authorized are null and void. Jeffersonian Pub. Co. v. Hilliard, 105 Ala. 576, 581, 17 So. 112; Marengo County v. Barley, 209 Ala. 663, 665, 96 So. 753; Commissioners' Court v. Moore, 53 Ala. 25. If the warrant for $2,526 two years prior to movant's warrants was illegal or unauthorized by law, and if that sum had not been so illegally expended, available funds would have remained in the pertinent special or road fund to have paid all or some of movant's registered claims. He was prejudiced thereby, in the illegal postponement or refusal of payment of his registered claim when duly presented. Such was the prima facie effect of Ramage's testimony.

The existence of a warrant in due form, if issued with authority and duly presented, makes a prima facie case for movants; if without authority of law, it is void. Rhodes v. Marengo County Bank, 205 Ala. 667, 88 So. 850; Marengo County v. Barley, 209 Ala. 663, 96 So. 753. We have indicated that the burden of proof was on defendant to show that the movant's registered warrants on claims presented and rejected of payment, were not subject to payment when so refused. It being admitted that they were lawful claims, nonpayment was not justified (1) by reason of invalidity of illegality, (2) by reason of postponement of payment by prior lawful registered warrants, or (3) that there was not a sufficient fund under the law to authorize the payment of any one or more of the warrants; hence the importance of the warrant paid for $2,526.

It is insisted there was error in declining to admit in evidence "the report of the financial condition of Pike County, from January 1, 1924, to July 1, 1924, as recorded in Minute Book of the Commissioners Court of Pike County, marked 'From November, 1918,' on pages 322 to 358 inclusive, and published in the Troy Herald, a newspaper published in Pike County, Alabama, in the issues thereof dated Saturday, July 19, 1924, and Tuesday, July 22, 1924; and report of the financial condition of Pike County from July 1, 1924, to January 1, 1925, as recorded in Minute Book of the Commissioners Court of Pike County, marked 'From November 1918,' on pages 359 to 372, inclusive, and published in the Troy Herald, a newspaper published in Pike County, Alabama, in the issues thereof dated Friday, January 23, 1925, and Tuesday, January 27, 1925. The said reports being read are substantially as follows, to-wit"— setting out the reports. The grounds of objection, among others, were "upon the ground that it purports to be a statement from the minutes of the commissioners court, and not from the books of the County Treasurer. 4th, it is secondary evidence. 5th, there is nothing which shows from what source the information contained in this report was obtained. 6th, it purports to be an abbreviated statement of the financial condition of the County made by the commissioners court, and among other things deals with accounts on file in the commissioners court and other matters that do not pertain to the office of County Treasurer." It is the duty of the county treasurer to keep separate registers of claims presented against the "general fund" and the "special fund, if any," and the "fine and forfeiture fund"; to number and register in order in which they are presented claims audited and allowed, and (except as otherwise provided by law) to pay in the order of their registration; to submit to the court of county commissioners at the first term in each year the register of claims, etc.; and to furnish the judge of probate a verified statement of all moneys received by him for the county, etc. Section 303, Code.

The annual account of the depository or treasurer, examined and approved by the court of county commissioners, is required by law to be recorded, and a copy of the same posted at the courthouse door. Sections 307, 315, Code. In counties where there are depositories in lieu of county treasurers, they are charged with all and like duties and liabilities imposed by law upon county treasurers. Sections 312–318, Code; Ramage, Parks & Co. v. Folmar, 214 Ala. 661, 108 So. 580.

These published statements, though for some purposes, may be prima facie evidence —as impeachment in a proper case—of the financial condition of some county fund, when that statement is actually made up by

the treasurers or depositories. The primary purpose of such statements, required to be published or posted, is that of information to the general public of the county's financial status. General Acts 1915, pp. 823, 824; Code of 1907, § 3317; Code of 1923, § 6766; General Acts 1919, p. 451. The report of the financial condition of that county, as recorded in the Minute Book of the commissioners court, was offered as evidence in the instant proceeding. The certified transcript thereof was not offered, as provided for transcripts of books kept in any public office and certified by the custodian, and required to be received in evidence by the courts. Sections 7681, 7791, subd. 9, Code. There was error in its rejection, over the exception of plaintiff-movant, as the original record. Stevenson v. Moody, 85 Ala. 33, 4 So. 595.

■ Adverting to the purpose and effect of the several county funds, it may be observed that the general road fund, against which the instant warrants are registered and payable, is the result from sources of revenue provided by law: (1) The special tax of one-fourth of 1 per cent. upon each $100 value of taxable property, to be applied to the payment on road and bridge erection, construction and maintenance, and to the payment of interest on road bonds, section 215, Const.; Code §§ 213, 217; Ramage, Parks & Co. v. Folmar, 214 Ala. 661, 663, 108 So. 580; General Acts 1903, p. 414; (2) a tax that may be further augmented by a "county license tax on vehicles" for maintenance of public roads, bridges, and ferries of the county. Code, § 1366; Ramage, Parks & Co. v. Folmar, supra. In the instant case there is no evidence that a vehicle tax was levied in Pike county. (3) And a special road fund is the result of the commutation fee in lieu of road work and labor to be done on a given road, which is to be used in the "maintenance and improvement" of public roads which must be the public roads of the precinct where the work was performed. Code of 1923, §§ 1363, 1365; Ramage, Parks & Co. v. Folmar, supra. (4) The gasoline excise tax. Acts (Aug. 22) of 1923, p. 197, § 83; Act of Feb. 10, 1923, pp. 36, 38, § 8; Ramage, Parks & Co. v. Folmar, supra. See Amendments 1927, pp. 16, 326, et seq. § 9. Those special funds are required to be expended exclusively for maintenance and repair of roads, highways, and bridges in a given county or a given district, as the case may be, except as specially provided for Tuscaloosa county. Local Acts 1927, p. 198, § 1. See, also, First Nat. Bank v. Smith, 217 Ala. 482, 117 So. 38.

It is thus noted that the road funds for Pike county were to be augmented or created from (a) the special tax levied under organic and statute law, of 25 cents on the hundred of taxable property; (b) from commutation fees in lieu of road work; (c) the gasoline excise tax. However, these several funds must be expended as provided by statute, and this would lay out of present consideration the commutation and gasoline excise tax funds and warrants against said special road funds.

There were observations made on the former appeal of the adoption of a yearly budget by the county commissioners, and of the right to transfer moneys from the road fund to the general fund of the county in the application and payment of interest on the bonded indebtedness of the county, that need not be repeated. And, as shown by a budget under Acts of 1919, p. 722, though interest on road bonds is not a current governmental expense (Rhodes v. Marengo County Bank, 205 Ala. 667, 88 So. 850), since the "full faith, credit and resources" of the county are subject to its payment, it becomes primarily a charge or liability against the road fund, into which goes the tax of one-fourth of 1 per cent. levied specifically for the purpose of meeting such obligations. The treasurer or depository might reasonably be expected to retain a sufficient balance in this fund at all times to add to the county's conservatively anticipated income, to enable the treasurer or depository to meet such obligations upon demand, regardless of the budget. It is not necessary that he retain a balance (equal to the full amount of interest due during a year) throughout the whole year. In this instance said amount of interest yearly was $18,130, of which, it is agreed, $7,815 had been paid on January 1st, and the general road fund had received $4,191.28 from March 2, to July 1, 1925, of which the record shows $3,643.69 came from the tax collector. It was, obviously, unnecessary for the treasurer or depository to have retained $7,815 to meet that amount of interest which had already been paid. It was only reasonable for him, with the record of income of the past as his guide, to have made some allowance for receipts anticipated between the presentation of the warrants and the next considerable maturity of interest on July 1st. The reasonable view to be entertained by the depository should have taken into consideration the fact that the "full faith, credit and resources" of the county are subject to the liquidation of the bonded indebtedness or interest; for example, while the record does not furnish the total receipts of the fund available during the same period of the previous year, it does inform that it was augmented by the receipt of $4,046.52 from the tax collector during the like time. And complete information relative to receipts of previous years was in possession of the county depository, and should have guided him in the premises.

■ The current governmental expenses, of which the budget may consist (without defining the proper subjects or items that may compose a budget), are obligations against the general funds of the county, and to the payment of that budget the road funds are not subject. This results from the fact that the levies in this behalf are for a specific pur-

pose or purposes, and cannot be legally disbursed for a different purpose. Hence, the county depository cannot legally point to the budget as his authority to withhold general road funds, and refuse payment of warrants from such special funds of an otherwise payable warrant upon and from such fund. That is to say, the one-fourth of 1 per cent. levy for roads and bridges (the general road fund), nor the special funds as the gasoline excise tax, etc. (to be expended only in maintenance and repair of roads and bridges, Acts 1923, p. 197), and the revenue from commutation or *per capita tax* in lieu of road work, are not funds subject to the payment of the general items of the budget. Ramage, Parks & Co. v. Folmar, supra.

It all comes to this, whether the depository had, or should have had, sufficient funds in the *general road fund*, on which movant's warrants were drawn, and against which they were registered and payable, at the time of their presentation for payment, to pay them in the order of their registration. Let us, for the purpose of this discussion, take no account of its anticipated income, and reserve sufficient to pay all interest, since the result on another trial is not altered by so doing; with this assumption, the record shows the status of this fund to have been as follows on March 2, 1925, the date of presentation and refusal of payment:

$19,447.68 Balance in general road fund "in the treasury."
10,315.00 Int. due in April, July, and October on bonds.

$ 9,132.68 Actually available even after reservation for all interest on bonds.

There was therefore actually available, even with above assumption, moneys to have paid several of movant's warrants, as was held in the former decision of this court. The treasurer's books in evidence indicated that on March 2, 1925, the date on which warrants were presented, the "General Fund" was shown to have been $28,598.78, and the "Road Fund" $18,325.91.

But the status of this fund should have been as follows, if we may look to the former decision and record, N. C. & St. L. Ry. v. Crosby, 194 Ala. 338, 70 So. 7:

$ 9,132.68 Balance actually available above
.: 18,000.00 Payment of warrants of later registration as ascertained and stated by Mr. Justice Sayre on first appeal, Ramage, Parks & Co. v. Folmar, 214 Ala. 661, 108 So. 580.

$27,132.68
$ 2,526.00 Unauthorized payment of warrant above discussed and with which the depository is charged.

$29,658.68 (Less $10,315 reserved for interest) Balance which should have been on hand March 2, 1925, when movant's claims were presented and refused payment.

Since the case must be retried, we may observe that the statute allows interest from the demand and refusal, and 10 per cent. damages, section 10265, Code, where there is an unlawful refusal of payment. And these items of interest and damages are sought on the several warrants of appellant, notwithstanding the fact that several of said warrants have been paid by the treasurer since the litigation was initiated. If any warrant or warrants were refused without authority of law, the movant is entitled to collect, on such warrant, the additional sums indicated by the statute. Section 10265, Code.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.