THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY CRAIG *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 78-780

Opinion filed December 31, 1979.

Ralph Ruebner and Rosetta Hillary, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Myra J. Brown, and W. Michael Fay, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

Defendant Larry Craig was charged by information with one count of possession of a controlled substance, phencyclidine. (Ill. Rev. Stat. 1977, ch. 56½, par. 1402(b).) Defendant Thomas Finucane was charged by information with one count of possession of a controlled substance, heroin, and one count of possession of a controlled substance, phenmetrazine. (Ill. Rev. Stat. 1977, ch. 56½, par. 1402(b).) Following a bench trial both defendants were convicted. Craig was sentenced to 1 to 3 years and Finucane was sentenced to two concurrent terms of 1 to 3 years.

Both defendants argue on appeal that the State did not prove beyond a reasonable doubt that the substances analyzed by the State's chemists and determined to be controlled substances were the same substances found in the defendants' possession. Defendant Finucane also contends that the evidence was insufficient to prove beyond a reasonable doubt that the substance allegedly recovered from him was phenmetrazine.

The State's evidence showed that on January 14, 1977, at approximately 1:30 a.m., Chicago Police Officers Scapardine and Slowik observed the defendants and another man standing near a late model Oldsmobile which had stopped in the middle of the street in the 800 block at 82nd Street. Officer Scapardine observed Finucane hand an amount of currency to the driver, who handed him a tinfoil packet. When the officers attempted to arrest the defendants, they fled. A second police car containing Chicago Police Officers Cammlarie and Parrillo arrived on the scene. Scapardine told them to "grab Larry and Fig," the defendants, and that a deal had just been made.

Cammlarie arrested the defendants a block away. Later, at the police station in the presence of Parrillo, he searched Finucane and recovered, from the inside pockets of his jacket, three hypodermic needles, one large tinfoil packet containing 14 maroon pills, one tinfoil packet of brown powder and one tinfoil packet containing three peach-colored pills and five yellow pills. Parillo placed these items into an evidence bag, People's Exhibit 2, and took it to Slowik who inventoried its contents. After Parillo signed and sealed the envelope he deposited it into the police department's safe.

Parrillo was also present when Craig was brought to the lockup. Craig took his wallet out of his pocket and placed it on a table. The lockup personnel removed nine tinfoil packages from the wallet. Parrillo took these items to Slowik who inventoried them. Parrillo placed the packages in an envelope, People's Exhibit 5, signed and sealed it and deposited it into the police department's safe.

It was stipulated at trial that if called, Robert J. McMillin, a police department chemist, would testify that three pink tablets in People's Exhibit 2 contained phenmetrazine and that the brown powder in the tinfoil packet was heroin.

The parties also stipulated that if called Wilson W. Terrell, a police department chemist, would testify that the substance in the three foil packets contained in People's Exhibit 5 was phencyclidine.

It was further stipulated that the proper chain of custody of this evidence was maintained at all times since it was placed in the police mail.

Defendant Finucane testified that he had let someone else wear his jacket prior to January 14. He denied that he had any narcotics on his person on the date of his arrest.

Defendant Craig testified that he did not have any narcotics in his possession on January 14, 1977. Inside the police station he was ordered to remove his clothing. The officers did not recover any narcotics from his wallet or other possessions. When the civilian working in the lockup searched him he took Craig's wallet and left the room. When the civilian returned with Parrillo they had tinfoil packages in their hands which Craig testified he had never seen before.

The defendants contend that the State failed to prove beyond a reasonable doubt that the substances analyzed by the police chemists were the substances taken from the defendants. However, the foregoing evidence clearly demonstrates a chain of possession from the time the evidence was discovered on the person of the defendants until the objects were placed in the evidence envelopes. The defendants stipulated at trial to the integrity of the chain thereafter, and the stipulations introduced at trial established the chemical nature of the substances obtained from the defendants. In this case there is not the slightest proof of any substitution or tampering with the contraband.

■■■ The defendants contend that the fact that no mention was made in the stipulation with respect to other substances recovered from the defendants raises the possibility of tampering or substitution prior to the time the narcotics envelopes reached the chemists. However, because the defendants were charged only with possession of three controlled substances, any mention of the other substances in the stipulation would have been unnecessary. As the court observed in *People v. Pagliara* (1977), 47 Ill. App. 3d 708, 365 N.E.2d 72, the prosecution is not required to exclude all possibility of tampering, but is only required to show a reasonable probability that the article has not been changed in any important respect. The State met its burden in proving the integrity of the chain of possession of the evidence. See *People v. Valentin* (1978), 66 Ill. App. 3d 488, 384 N.E.2d 67.

Defendant Finucane's second contention, that the State did not prove beyond a reasonable doubt that the substance he possessed contained phenmetrazine, is based upon a defect in the report of proceedings at trial in which the crucial words stating the conclusion of the chemical examiner concerning the substance was not reported because it was "inaudible." The parties corrected the report of proceedings by filing a stipulation in this court which makes clear that the stipulation actually read into the record at trial stated that the substance possessed by defendant contained phenmetrazine. This contention, consequently, is without merit.

Though not raised by the defendants, we think it important for this court to determine whether our recent decision in *People v. Natoli* (1979), 70 Ill. App. 3d 131, 387 N.E.2d 1096, has any application in the present case. In *Natoli* the defendant was convicted of possession and delivery of the controlled substance ethclorvynol. Possession of that substance was a Class 3 felony (Ill. Rev. Stat. 1977, ch. 56½, par. 1402(b)), while its delivery was a class 4 felony (Ill. Rev. Stat. 1977, ch. 56½, par. 1401(e)), a lesser offense. This court held invalid a sentencing statute that irrationally authorized a higher penalty for possession of a controlled substance than for delivery of the same substance.

As the Illinois Controlled Substances Act distinguishes at length among the various schedules of controlled substances, we think the laws about possession of small amounts of such substances are logically and legally separable according to schedule. For convenience and to avoid unnecessary repetition, these provisions are expressed in a single section, 402(b) (par. 1402(b)) which does not mention schedules.

The Illinois Controlled Substances Act is not an inseparable whole. The legislature would not have wanted to abandon all of it upon any part being held invalid, and there is nothing strange or unjust about enforcing one part without the other. *Natoli*, therefore, did not sweep away all drug laws.

In the instant case, unlike *Natoli*, the sentencing statute (par. 1402(b)) did not authorize a higher penalty for possession of the controlled substances involved (heroin, phenmetrazine and phencyclidine) than the penalty for delivery of these substances prescribed by section 401 (par. 1401). Finucane was convicted of two Class 3 felonies involving possession. Delivery of the quantity of heroin he possessed would have been a Class 2 felony, a higher offense, while delivery of the phenmetrazine would have been a Class 3 felony. Craig likewise was convicted of a Class 3 felony. Delivery of the phencyclidine he possessed would also have been a Class 3 felony. (Ill. Rev. Stat. 1977, ch. 56½, pars. 1401, 1402.) Therefore, the defendants' equal protection rights were not violated by their convictions. See *People v. Rhodes* (1967), 38 Ill. 2d 389,

231 N.E.2d 400 (same penalty for attempt as for completed offense), discussed in *Natoli*.

Similarly, the penalties provided for these crimes are not such obvious mistakes (*Natoli*, at 140) that we should not enforce them. It is not unbelievable that the legislature might wish to punish possession as severely as delivery. *Cf.* Ill. Rev. Stat. 1977, ch. 56½, pars. 1401(a), 1402(a) (delivery and possession of large quantities of controlled substances both Class 1 felonies, though maximum fines differ); *People v. Rhodes.*

■■ Neither will we hold the sentence for possession of substances in one schedule impeached by a mistake concerning another. Such an approach would necessitate the speculative rewriting we avoided in *Natoli*. In *Natoli*, the mistake in the possession statute did not put the delivery statute under a cloud; even though the delivery statute was one-half of the anomaly, we did not suppose the legislature meant to punish delivery less severely than it said. The laws we apply today, though less particularized, are equally clear, and even less exceptional in themselves, and we will look no further. We find no fault with those laws which punish possession of a particular controlled substance no more severely than its delivery.

For the foregoing reasons the judgments of the Circuit Court of Cook County are hereby affirmed.

Affirmed.

SIMON, P. J., and McNAMARA, J., concur.