THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AUBREY HOLMAN *et al.*, Defendants-Appellants.

First District (1st Division)   No. 85—3019

Opinion filed June 29, 1987.

Paul P. Biebel, Jr., Acting Public Defender, of Chicago (Andrea Monsees, Assistant Public Defender, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Paula M. Carstensen, and John A. Gasiorowski, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

Defendants, Aubrey Holman and Howard Young, were charged by information in the circuit court of Cook County with violations of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1983, ch. 56½, par. 1100 *et seq.*). Holman was charged with possession of a controlled substance with intent to deliver in violation of section 401(d) of the Act, and Young was charged with possession of a controlled substance in violation of section 402(b). (Ill. Rev. Stat. 1983, ch. 56½, pars. 1401(d), 1402(b).) Following a bench trial, both defendants were found guilty of the respective charges placed against them. Thereafter, the court denied the defendants' post-trial motions and sentenced Holman to four years' imprisonment with one year's mandatory supervised release and sentenced Young to two years' imprisonment with one year's mandatory supervised release.

The defendants appeal and raise the following contentions: (1) the charging instrument failed to charge either defendant with an offense recognized in Illinois; (2) the physical evidence introduced against the defendants was seized during searches incident to their illegal warrantless arrests which were unsupported by probable cause; (3) the State failed to preserve the integrity of its physical evidence and failed to prove chain of custody; (4) the trial court im-

properly placed the burden of proving chain of custody upon defendants; and (5) the trial court abused its discretion when it sentenced the defendants.

We affirm.

Prior to trial, each defendant moved to quash his arrest and to suppress evidence obtained as a result of his allegedly illegal arrest. During the hearing on the defendants' motions, Jerome Rusnak testified for the defendants. Rusnak, a 19-year veteran of the Chicago police department, testified that he and his partner were working in the vicinity of 2341 West Madison Street, Chicago, Illinois, on the evening of February 3, 1985. Rusnak stated that he and his partner were working in plain clothes and were assigned to an unmarked squad car. Rusnak characterized the area as a "high drug traffic area" where numerous arrests had been made in the past.

On that evening at about 8:30 p.m., Rusnak testified, while using a pair of binoculars, he watched two individuals standing together on Madison Street approximately 200 to 300 feet away. Rusnak stated that he observed one of the individuals reach inside his coat, remove a plastic bag and shake two pills into his hand. Rusnak identified defendant Holman in court as that man. Rusnak testified that Holman then handed two pills to the other individual, who then walked away from Holman and onto Western Avenue. Rusnak identified defendant Young in court as that other individual.

Rusnak stated that he believed he had just witnessed a drug transaction occur between the two defendants. Rusnak based his belief upon the activity he had just observed, the area in which he had observed it and his 19 years' experience as a police officer during which he had observed hundreds of drug transactions. Rusnak admitted that he had testified at the defendants' preliminary hearing that he could not tell what was in the bag or what was exchanged between the defendants because he was too far away. However, Rusnak explained that he meant that he could not specifically identify what type of pills had been exchanged between Young and Holman but that he did see an exchange of pills take place.

Rusnak testified further that he only had lost sight of Young for 15 to 30 seconds after Young walked away from Holman. Rusnak stated that he then drove onto Western Avenue and spotted Young, who was standing near a bus stop. Rusnak further stated that he drove alongside Young and stopped. Rusnak was approximately five to seven feet away when he saw Young drop one blue pill and one yellow pill to the sidewalk. Rusnak stated that he recovered the two pills dropped by Young. Again, based upon his experience as a police

officer, Rusnak suspected that the yellow pill was pentazocine (Talwin), a controlled substance, and that the blue pill was pyrobenzamine, not a controlled substance. This combination, Rusnak said, is commonly referred to as "T's and blues." Rusnak testified that he then placed Young under arrest.

Rusnak further testified that he and his partner returned to the scene on Madison Street where the exchange between Young and Holman had just occurred. Rusnak stated that he then placed Holman under arrest and transported both defendants to the police station. Once at the station, Rusnak said that he stood next to Holman while another police officer searched him. According to Rusnak, the other officer recovered a plastic bag from Holman's coat. That bag contained eight blue pills and eight yellow pills which were also suspected of being "T's and blues."

Defendant Aubrey Holman also testified at the suppression hearing. According to Holman, he was crossing the street with his cousin, Randall Lewis, to buy some shampoo when both he and his cousin were arrested by Rusnak. Holman said that Rusnak did not show him any warrant. Holman also denied knowing Young, he denied giving Young any pills on the night he was arrested, and he denied ever talking to Young before his arrest.

Afterwards, the trial judge denied both motions to suppress. The judge stated that he found Officer Rusnak to be a credible witness and that, under the circumstances, he had a right to stop the defendants to investigate their suspicious behavior. The judge also found that no search had occurred with respect to defendant Young since he had dropped what the experienced officer suspected was a controlled substance. At that point, the judge stated, there was probable cause to arrest Young. The judge also found that there was probable cause to arrest defendant Holman. Therefore, the trial court concluded that the search of Holman at the station was proper.

Thereafter, the defendants' trial began. The parties stipulated that the initial testimony of Officer Rusnak at trial would be exactly as he testified at the suppression hearing. Rusnak was called to the stand and continued testifying about the events of February 3, 1983, and stated that he had placed the two pills dropped by Young into an evidence envelope with inventory number 166213. Rusnak also said that the 16 pills and the plastic bag recovered from Holman's coat were placed into an evidence envelope with inventory number 166214. Rusnak further testified that both envelopes were sealed and then placed into a vault at the police station. Subsequently,

Rusnak stated the envelopes that had been placed into the vault would be hand carried to the crime lab by an evidence technician.

The parties then stipulated that Lawrence Wilson, a chemist employed at the Chicago crime lab, if called to testify, would testify that he examined inventory lot number 166213, which according to the stipulation contained a manila envelope, one yellow tablet and one blue tablet. Also, he would testify that the yellow oblong tablet weighed 0.20 grams and was labeled T-51, and that Wilson determined that the yellow tablet was pentazocine, which is also known as Talwin. Furthermore, it was agreed that Wilson did not test the blue tablet for the presence of controlled substances.

The parties also stipulated that Arlene Waskiewicz, another police chemist, if called to testify, would testify that she examined inventory lot number 166214. It was agreed she would say that she examined eight oblong yellow tablets and eight blue tablets and determined that the eight blue tablets were not a controlled substance. Waskiewicz' testimony would establish that she then tested two of the yellow oblong tablets and determined that these two tablets, which had a combined weight of 0.40 grams, were pentazocine.

After the parties stipulated to the chemists' testimony, the State rested. The defendants then moved for directed findings arguing that the State failed to prove chain of custody. The motion was denied.

Defendant Young testified at trial in his own behalf. Young denied having any pills in his possession when arrested by Officer Rusnak. He also denied dropping any pills when Rusnak approached him on Western Avenue. The defense rested at the completion of Young's testimony. Again, the defendants moved for directed findings arguing that the State failed to prove chain of custody. The court denied the motion finding that the State had sufficiently proved the chain of custody concerning the pills. Thereafter, as previously stated, the trial judge found the defendants guilty as charged, denied defendants' post-trial motions and sentenced each defendant to a term of imprisonment.

The defendants initially contend that the information by which they were charged was defective since it failed to charge either defendant with a criminal offense recognized under Illinois law. Their contention is based upon the fact that the information charged the defendants with possessing or possessing with intent to manufacture or deliver a substance containing a controlled substance and not with possessing a controlled substance. The defendants assert that while sections 401(a) and 402(a) of the Illinois Controlled Sub-

stances Act (Ill. Rev. Stat. 1985, ch. 56½, pars. 1401(a), 1402(a)) make it a felony to possess or possess with the intent to manufacture or deliver a substance containing a controlled substance, they were charged under sections 401(d) and 402(b) (Ill. Rev. Stat. 1985, ch. 56½, pars. 1401(d), 1402(b)), which speak only to the amount of a controlled substance which is illegal to possess and not to the possession of a substance containing a controlled substance. They contend that sections 401(a) and 402(a) represent separate and distinct statutory classifications from those found in sections 401(d) and 402(b) (see *People v. Mayberry* (1976), 63 Ill. 2d 1, 345 N.E.2d 97; *People v. Yettke* (1981), 95 Ill. App. 3d 365, 420 N.E.2d 194) and that the words "a substance containing" cannot be read into sections 401(d) and 402(b), under which the defendants were charged. Hence, the defendants conclude that their convictions must be reversed.

The State, on the other hand, asserts that the defendants failed to raise this issue in the trial court, and, therefore, the sufficiency of the charging instrument, *i.e.*, the information, must only meet the minimal legal and constitutional test of validity as set forth in *People v. Pujoue* (1975), 61 Ill. 2d 335, 335 N.E.2d 437. The State contends that the information here meets the requirements in *Pujoue*.

In *People v. Pujoue* (1975), 61 Ill. 2d 335, 335 N.E.2d 437, the supreme court held that the sufficiency of a criminal complaint attacked for the first time on appeal is tested by whether "it apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct." (61 Ill. 2d 335, 339, 335 N.E.2d 437, 440.) Additionally, where a statute is cited in the charge, as is the case here, the statute and the charge are to be read together. (*People v. Phelan* (1981), 99 Ill. App. 3d 925, 426 N.E.2d 925.) Furthermore, the sufficiency of a charge is determined by the substance of the charge and not by the technicalities of its language. *People v. Powell* (1978), 72 Ill. 2d 50, 377 N.E.2d 803.

■ We have examined the record in this case and find that the defendants treated the information here as properly charging violations of sections 401(d) and 402(b) of the Act. Additionally, the defendants have made no attempt to demonstrate how they were prejudiced in the preparation of their defenses because of any excess verbiage. The defendants first moved to suppress the pentazocine tablets as evidence. During the suppression hearing, Holman testified and denied giving any pills to Young on the night in question.

Additionally, Young testified at trial, and he denied possessing or dropping any pills before he was arrested by Officer Rusnak. Clearly, we perceive no prejudice towards the defendants in the preparation or presentation of their defenses nor will this court presume that such prejudice occurred. Furthermore, the record readily demonstrates that the defendants would be able to plead the information here for any subsequent prosecution for the same conduct. Accordingly, we find no merit in this claim.

■ Next, the defendants contend that the trial court improperly denied their motions to suppress. Defendant Young claims that the two pills recovered from the sidewalk near him were illegally seized in a search incident to his warrantless arrest which he contends was unsupported by probable cause. Defendant Holman likewise claims that the bag of pills recovered from his person at the police station was illegally seized during a search incident to his warrantless arrest which he also contends was unsupported by probable cause. Thus, they argue that all evidence seized by the police should have been suppressed. However, for the following reasons, we find that these contentions are without merit.

■ A criminal defendant who moves to suppress evidence he alleges was seized illegally has the burden of proving that the search and seizure were unlawful. (*People v. Grice* (1980), 87 Ill. App. 3d 718, 410 N.E.2d 209; Ill. Rev. Stat. 1985, ch. 38, par. 114—12(b).) This court cannot reverse the trial court's decision to grant or deny a motion to suppress unless that decision is against the manifest weight of the evidence. *People v. Hoskins* (1984), 101 Ill. 2d 209, 461 N.E.2d 941.

■ The supreme court in *People v. Lippert* (1982), 89 Ill. 2d 171, 432 N.E.2d 605, explained the nature of probable cause required before the police may arrest an individual without a warrant:

> "Probable cause for arrest exists when facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense. [Citations.] Although a 'mere suspicion' that the person arrested has committed the offense is an insufficient basis for arrest [citations], evidence sufficient to convict is not required [citations]." (89 Ill. 2d 171, 178, 432 N.E.2d 605, 608.)

Further, it is well settled that a police officer may, under appropriate circumstances, approach an individual and temporarily detain him for a reasonable period of time in order to investigate possible

criminal behavior. (See *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *People v. Tribett* (1981), 98 Ill. App. 3d 663, 424 N.E.2d 688; *People v. Grice* (1980), 87 Ill. App. 3d 718, 410 N.E.2d 209.) Nevertheless, even though probable cause to arrest is not required under those circumstances, the officer's decision to stop must be based on specific and articulable facts which, when combined with rational inferences from those facts, warrant an investigative intrusion. *People v. Tribett* (1981), 98 Ill. App. 3d 663, 671, 424 N.E.2d 688, 694.

We find *People v. Bridges* (1970), 123 Ill. App. 2d 58, 259 N.E.2d 626, and *People v. Tribett* (1981), 98 Ill. App. 3d 663, 424 N.E.2d 688, dispositive of the defendants' claims that their motions to suppress should have been granted. In *Bridges*, the trial court granted the defendant's motion to suppress, but the appellate court reversed. There, the arresting officer observed the defendant, who was walking down the street, throw a small tin container. The officer retrieved the container and discovered that it contained capsules which he suspected to be barbiturates. He then placed the defendant under arrest, and a subsequent search yielded a number of hypodermic needles. In determining that the capsules should not have been suppressed as evidence, the appellate court considered the following factors: no search occurred since the officer had observed the defendant drop the container to the ground under sufficiently suspicious circumstances to warrant further investigation; the container was in plain and open view since it had been abandoned by the defendant in a public place; and no unlawful seizure took place since the container of capsules had been abandoned without evidence that somehow the police forced or intimidated the defendant into dropping it.

Similarly, the defendant in *People v. Tribett* (1981), 98 Ill. App. 3d 663, 424 N.E.2d 688, moved to suppress the heroin seized at the time of his arrest claiming that no probable cause existed for his arrest. The trial court denied his motion, and the appellate court affirmed. There, the arresting officers, based only on their observation of the defendant running into an alley, approached the defendant with their guns drawn, identified themselves as police officers and ordered the defendant to turn around. When the defendant turned around, he had one of his hands near the waistband of his pants. When ordered to raise his hand where it could be seen, the defendant dropped a packet to the ground and attempted to kick it with his foot. The officers retrieved the packet and discovered that it contained a crushed brown powder. The defendant was then ar-

rested. Initially, the court dismissed the defendant's claim that any arrest had taken place when the officers jumped out of their car with their guns drawn. Thereafter, the court specifically found that the police had probable cause to arrest the defendant when the officer discovered that the packet dropped and kicked by the defendant contained a crushed brown powder which the police officer reasonably believed to be narcotics.

Here, after observing the defendants exchange pills in what his 19 years' experience as a police officer led him to suspect was an illegal drug deal, Officer Rusnak was justified in approaching defendants and temporarily detaining them in order to further investigate their suspected criminal behavior. He immediately approached Young and saw him drop two pills to the ground. After retrieving and inspecting the pills, the officer suspected one of those pills to be a controlled substance. At that point, the trial judge found the officer had probable cause to arrest the defendants. On appeal, we cannot say this finding is manifestly erroneous.

We further find the cases cited by the defendants in support of their claims to be inapposite in that the arrests in the cases cited by the defendants were unsupported by probable cause and, therefore, required all evidence seized in any search incident to the illegal arrests to be suppressed. In *People v. Damon* (1975), 32 Ill. App. 3d 937, 337 N.E.2d 262, a police officer had been called to the scene to investigate a suspicious man. When the officer arrived, he saw the defendant throw a hand-rolled cigarette which the officer suspected to be marijuana. The officer then arrested the defendant, and a subsequent search of the defendant's person revealed six packets of heroin. The trial court denied the defendant's motion to suppress, but the appellate court reversed. The appellate court concluded that the State failed to prove sufficient knowledge on the part of the arresting officer to establish probable cause to arrest since there was no factual basis for the police officer's suspicion prior to defendant's arrest other than the officer seeing the defendant throwing a hand-rolled cigarette. Additionally, the record in that case was silent as to the length of the officer's career and the number of times, if any, he had seen marijuana previous to the defendant's arrest.

In contrast, Officer Rusnak was aware of much more than just defendant Young dropping pills "suspected" to be a controlled substance. He was able to personally observe the defendants' activities for approximately four or five minutes. The record further established that the officer's belief here that one of the pills recovered near defendant Young was a controlled substance was based, not

only on these firsthand observations, but also on his experience in witnessing hundreds of drug deals and his familiarity with pills such as these.

Similarly, the case before this court is also distinguishable from the facts presented in *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889. In *Sibron*, the arresting officer observed the defendant for eight hours, during which time the defendant was seen talking with known drug addicts. However, mere association with known drug addicts does not give rise to probable cause, and no probable cause existed there because the police officer did not see anything pass between the defendant and the "known" addicts, nor did he know the content of their conversations. Here, Officer Rusnak was aware of more than just the defendants' presence in a "high drug traffic area." He testified that he actually saw pills being passed from Holman to Young although he could not identify the specific type due to his distance. Later, he saw Young drop the pills, which, based on his experience, he believed to contain a controlled substance and which he knew as "T's and blues."

The defendants also argue that this "hybridized plain view/abandonment scenario" utilized by the trial court to support its finding that no search occurred was erroneous since there was no evidence to demonstrate that Young intended to abandon the pills by dropping them to the ground. However, we note that Young never offered, nor do we believe he could have offered, a basis for any expectation other than abandonment when he dropped the pills to the ground in a public place. Further, it is unreasonable to assume under such circumstances that the police officers would not pick the pills up and examine them. (See *People v. Hoskins* (1984), 101 Ill. 2d 209, 461 N.E.2d 941; 1 W. LaFave, Search and Seizure sec. 2.6(b), at 463 (2d ed. 1987).) Accordingly, based on the record presented in this appeal, we find that the trial court's denial of the defendants' motions to suppress was proper and not against the manifest weight of the evidence.

Next, the defendants contend that the State failed to preserve the integrity of its physical evidence or prove the chain of custody. This contention centers on the stipulations made by the parties concerning the testimony of the State's chemists. The defendants assert that a variance existed between Officer Rusnak's testimony describing the contents of the inventory packages and the contents detailed in the chemists' stipulated testimony. While Rusnak testified that he placed two pills into the envelope numbered 166213, the stipulation suggested that it contained two pills and a manila enve-

lope. Additionally, while Rusnak testified that a plastic bag containing 16 pills was placed into the envelope numbered 166214, the stipulation failed to mention a plastic bag.

Therefore, the defendants argue, in the absence of any evidence that the inventory packages were sealed, the length of time they were kept in the evidence vault at the police station, or who had access to the packages during that time period, these variances suggest that the evidence had been tampered with before the chemists received it. Accordingly, the defendants claim that the trial court, thus, erroneously denied their motions for directed findings and that the State failed to prove them guilty 'beyond a reasonable doubt. They further contend that the trial court, in fact, improperly imposed the burden of disproving chain of custody on the defense while it was the State's burden.

Real evidence is admissible when an adequate foundation is laid to establish that the evidence is connected to the crime and remains substantially unchanged since its seizure by the police. (*People v. Slaughter* (1986), 149 Ill. App. 3d 183, 500 N.E.2d 662.) A proper foundation is laid for an object either through its identification by a witness or through the establishment of a chain of custody. (*People v. Greer* (1963), 28 Ill. 2d 107, 190 N.E.2d 742; *People v. Ziehm* (1983), 120 Ill. App. 3d 777, 458 N.E.2d 588.) In establishing proper chain of custody, the State need not exclude all possibility of tampering. (*People v. Tribett* (1981), 98 Ill. App. 3d 663, 424 N.E.2d 688.) The State need only demonstrate that the exhibit has not been changed in any important respect. (*People v. Irpino* (1984), 122 Ill. App. 3d 767, 461 N.E.2d 999; *People v. Craig* (1979), 79 Ill. App. 3d 1019, 398 N.E.2d 1172; *People v. Valentin* (1978), 66 Ill. App. 3d 488, 384 N.E.2d 67.) Furthermore, the propriety of admitting real evidence rests primarily with the trial court, and this court will not disturb that decision absent a showing that the trial court abused its discretion and that such abuse prejudiced the defendant. *People v. Melchor* (1985), 136 Ill. App. 3d 708, 483 N.E.2d 971.

We find that the State presented sufficient evidence to prove chain of custody. Officer Rusnak testified that he inventoried the eight yellow pills and the eight blue pills recovered during Holman's post-arrest search under inventory number 166214, that he deposited those pills into an evidence envelope which he then sealed and deposited in the department vault. Rusnak also testified that he inventoried the blue pill and the yellow pill dropped by Young under inventory number 166213, that he placed those pills into an evidence envelope which he sealed and also deposited in the department

vault. He stated that the envelopes would be hand carried to the crime lab by an evidence technician. The parties then stipulated to the testimony of the State chemists. Chemist Wilson's testimony, it was agreed, would establish that he examined two tablets matching Rusnak's description from lot number 166213 and that the yellow oblong pill was pentazocine. Chemist Waskiewicz' testimony, it was acknowledged, would establish that she examined 16 tablets matching Rusnak's description from lot number 166214 and that two of the eight yellow oblong tablets were pentazocine. We believe this evidence adequately demonstrated that the evidence had not been changed in any "important" respect from the time it was recovered by the police until the time it was analyzed by the chemists.

We also find the variances defendants complain of insufficient to create a tangible suggestion that the evidence had been altered, substituted or tampered with. The alleged variations here are similar to those encountered by this court in *People v. Craig* (1979), 79 Ill. App. 3d 1019, 398 N.E.2d 1172. In *Craig*, the defendants were convicted of possession of three different controlled substances. Police officers there testified that numerous substances recovered from the defendants, in addition to those giving rise to the specific charges, were placed into two evidence bags, which were then sealed, inventoried and placed in the department's vault. The parties stipulated that a proper chain of custody was maintained at all times after the evidence had been placed in the police mail. The parties also stipulated that certain police chemists, if called to testify, would testify that the two exhibits contained the three controlled substances. However, the stipulated testimony failed to mention any articles other than the items giving rise to the charges. The defendants in *Craig* argued, like the defendants argue here, that the fact that no mention was made in the stipulation with respect to those other substances indicates that the evidence had been altered, substituted or tampered with between the time it was discovered and the time it reached the chemists. In dismissing this contention, the court stated that any reference to the other substances in the stipulated testimony would be unnecessary since the defendants were not charged with possession of those other substances. The court concluded that the State had met its burden in proving the integrity of the chain of possession.

Likewise, the fact that the stipulated testimony here could support defendants' claims that a plastic bag was missing and that an additional manila envelope was presented when the evidence was received by the chemists does not destroy the integrity of the evi-

dence. It only affects the weight the trier of fact will attribute to the evidence. See *People v. Ziehm* (1983), 120 Ill. App. 3d 777, 458 N.E.2d 588; *People v. Valentin* (1978), 66 Ill. App. 3d 488, 384 N.E.2d 67.

The defendants cite *People v. Slaughter* (1986), 149 Ill. App. 3d 183, 500 N.E.2d 662, in support of their claim. However, that case is distinguishable from this case since in that case there was a complete breakdown in the State's chain of custody. The appellate court in *Slaughter* found that the State failed to prove a proper chain of custody for the two hand-rolled cigarettes alleged to contain a controlled substance and, therefore, they should not have been introduced into evidence. There were breaks in the chain of custody and insufficient testimony to demonstrate that the evidence seized matched the evidence subjected to chemical analysis. Hence, it was impossible for the State to show that it was improbable that the evidence had been altered, substituted or tampered with. In particular, in that case, there was no evidence that the envelope into which the correctional officer placed the cigarettes seized from the defendant was ever sealed, inventoried or marked before depositing it into the correctional center's safe or that access to the safe had been restricted in any way. Here, there was no breakdown of the State's chain of custody. Unlike the officer in *Slaughter* who recovered the alleged controlled substance, Officer Rusnak testified that he inventoried the evidence, sealed the evidence envelopes and deposited the envelopes into the department vault and that they would be hand carried to the crime lab by an evidence technician.

■ The defendants' final contention is that the trial court abused its discretion by imposing sentences of imprisonment rather than probation or some other alternate disposition. The determination and imposition of sentence is a matter of considerable judicial discretion, and this court will not disturb the trial court's determination unless the trial court abused its discretion. (*People v. La Pointe* (1982), 88 Ill. 2d 482, 431 N.E.2d 344.) "[A]n abuse of discretion will be found only if the judgment of the trial court is manifestly unjust or palpably erroneous." *People v. Anderson* (1986), 112 Ill. 2d 39, 46, 490 N.E.2d 1263, 1267; *People v. Bean* (1986), 145 Ill. App. 3d 863, 496 N.E.2d 295.

Defendant Young argues that the trial court abused its discretion by denying him an opportunity to be evaluated for alternate sentencing under the Alcoholism and Substance Abuse Act (Ill. Rev. Stat. 1985, ch. 111½, par. 6301 *et seq.*). The record shows that Young requested and was, in fact, given an opportunity to be evaluated for

possible enrollment in Treatment Alternatives To Street Crimes (TASC) but that he failed to keep his appointment. However, Young claims he missed his appointment because he had a seizure. Therefore, he argues that the trial court abused its discretion by sentencing him to a term of imprisonment without an opportunity to make another appointment.

This same argument was raised in *People v. Bean* (1986), 145 Ill. App. 3d 863, 496 N.E.2d 295. The defendant in *Bean* failed to keep his appointment for TASC evaluation after being warned by the trial court of the consequences of his failure to keep such appointment. The defendant in *Bean* argued, like Young argues here, that the trial court's refusal to give him a second opportunity to obtain the necessary evaluation was an abuse of discretion. However, the appellate court rejected this argument. The court believed the viability of drug treatment as a sentencing alternative depends to a large extent on the sincerity of the defendant and that the trial court is in the best position to make that assessment. The court in *Bean* concluded that the trial court's determination was neither manifestly unjust nor palpably erroneous.

■ We likewise reject Young's argument that the trial court here abused its discretion by not giving him a second opportunity for TASC evaluation. While defendant Young claimed he had a seizure, that claim was not corroborated. Further, not only did Young deny at trial that he possessed any drugs, he denied during the presentence investigation that he used drugs. Under the circumstances, we cannot say that Young's sentence is manifestly unjust or palpably erroneous.

■ Defendant Holman also argues that the trial court abused its discretion by failing to consider his rehabilitative potential or whether a lesser term of incarceration, probation or other alternate disposition would be more appropriate in his case. However, the trial judge here was aware of Holman's prior criminal convictions and, additionally, that Holman was rejected by TASC. Accordingly, we cannot say that the trial court abused its discretion in sentencing Holman.

Accordingly, for the reasons stated above, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY and O'CONNOR, JJ., concur.