UNITED STATES of America,
Plaintiff-Appellee,

v.

Henry CHAPLINSKI,
Defendant-Appellant.

No. 78–5198
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Sept. 1, 1978.

Arthur Addess, Miami, Fla., for defendant-appellant.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Jack V. Eskenazi, U. S. Atty., Hugh F. Culverhouse, Jr., Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, COLEMAN and VANCE, Circuit Judges.

PER CURIAM:

Henry Chaplinski was convicted of importing cocaine in violation of 21 U.S.C. 952(a) and of possessing cocaine for distribution in violation of 21 U.S.C. § 841(a)(1). On appeal, he first contends that the District Court should have excluded the cocaine from the trial on the grounds that it was seized after an illegal search and that the Government had failed to establish a sufficient chain of custody. Second, he argues that the Court should not have permitted one of the Government's witnesses to testify. We find no merit to either of these contentions and affirm.

Appellant Chaplinski was employed by George S. Ford, president of an airfreight concern. Ford and Chaplinski travelled to Colombia twice in 1977 to set up an office in that country and to prepare Chaplinski to become the manager. Chaplinski was arrested in the Miami International Airport after the return flight from the second trip.

While making a routine inspection of Chaplinski's luggage, Customs Agent Johnson smelled a strong odor of glue and observed that the sides of the suitcase seemed unusually thick. He asked Chaplinski to remove his belongings from the suitcase, and, taking it into a separate office, cut the lining of the case and discovered two plastic bags filled with white powder glued to the sides of the suitcase. A thorough examination revealed a total of 18 such bags. The bags, which were tested "on the field" and proved to contain approximately 1,439 grams of cocaine, were delivered to Agent Baumwald of the Drug Enforcement Administration [DEA], who in turn took them to the DEA Office and laboratory.

Chaplinski's first argument is that the strong odor of glue provided the customs inspector with insufficient basis for the "reasonable suspicion" necessary to search the suitcase within constitutional limits. This argument misunderstands the law and understates the facts. At the border, customs agents need not have a reasonable or articulable suspicion that criminal activity is involved to stop one who has traveled from a foreign point, examine his or her visa, and search luggage and personal effects for contraband. *United States v. Brignoni-Ponce,* 1975, 422 U.S. 873, 887, 95 S.Ct. 2574, 45 L.Ed.2d 607; *United States v. Himmelwright,* 5 Cir., 1977, 551 F.2d 991; *United States v. Bowman,* 5 Cir., 1974, 502 F.2d 1215, 1219.[1] As we have stated many times before, "[t]he national interests in self-protection and protection of tariff revenue authorize a requirement that persons crossing the border identify themselves and their belongings as entitled to enter and be subject to search." *United States v. Brennan,* 5 Cir., 1976, 538 F.2d 711, 715; *United States v. Ingham,* 5 Cir., 1974, 502 F.2d 1287, 1291 (emphasizing importance of customs searches in collecting import revenues). Furthermore, the combination of a strong odor of glue with suitcase walls of an unusual thickness clearly provided a reasonable suspicion that contraband was present, and fully supported the agent's action in cutting the lining of the suitcase.

Chaplinski's second argument is that discrepancies in the amounts of cocaine entered on the reports accompanying the drugs as they were transferred between government personnel fatally taints the chain of custody for the cocaine introduced at the trial. Evidence of the record amply documents the journey of the cocaine from the time it was seized at the airport until it was analyzed at the DEA laboratory. "The adequacy of the chain of custody was a factual question which the jury resolved

---

1. Customs agents have broad authority to stop and search for contraband. 19 U.S.C. §§ 482, 1581, 1582; see also § 1496.

against appellant[s]." *United States v. Graham,* 5 Cir., 1972, 464 F.2d 1073, 1076.

■ Finally, Chaplinski attacks the admissibility of Charles Ford's testimony as a Government witness on the grounds that the Government misled the defendant as to the availability of this witness and did not inform the defendant that Ford would testify until the end of the final day of evidence. Chaplinski contends that this was a deliberate subterfuge designed to undermine F.R. Crim.P. 16 and the District Court's standing discovery order.[2] We hold this contention meritless. The Government's records indicate that agents unsuccessfully attempted to locate Ford shortly after Chaplinski's arrest. Chaplinski argues that the uncorrected record entry that Ford could not be found made it unjust for the Government later to present him as a "surprise" witness. The Government's response is that they later found Ford; that they did not intend to mislead the defendant as to Ford's availability, but that no rule requires them to reveal the names of the witnesses they intend to call. It is clear law that "[a]part from the Congressionally created exception in capital cases, the granting of a defense request for a list of adverse witnesses is a matter of judicial discretion . . . ". *United States v. Hancock,* 5 Cir., 1971, 441 F.2d 1285, 1286; *United States v. Moseley,* 5 Cir., 1971, 450 F.2d 506, 510. Chaplinski made no request for the names of the Government witnesses and we find no evidence of discretion used or abused.[3]

AFFIRMED.

2. The standing discovery order does not require the Government to report the names of witnesses adverse to the defendant, with the exception of alleged coconspirators, accomplices, or informants, witnesses who gave grand jury testimony, and witnesses receiving any preferential treatment or promises of immunity or leniency. R., vol. I, at 8–10.

3. Indeed, Ford testified that Chaplinski had telephoned him two weeks before the trial at Ford's office. Tr., at 174–75.