THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROLAND ZIEHM III, Defendant-Appellant.

Second District   No. 82—713

Opinion filed December 29, 1983.

John S. Biallas, of St. Charles, and Randy Johnson, of Elgin, for appellant.

Robert Morrow, State's Attorney, of Geneva (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE VAN DEUSEN delivered the opinion of the court:

Following a jury trial, defendant, Roland Ziehm III, was found guilty of the delivery of 30 grams or more of a controlled substance (Ill. Rev. Stat. 1981, ch. 56½, par. 1401(a)(2)) and was sentenced to 10 years' imprisonment. Defendant contends on appeal that (1) he was not proved guilty beyond a reasonable doubt due to defects in the chain of possession, (2) he was not proved guilty beyond a reasonable doubt because the State failed to prove defendant had knowledge of the amount delivered, and (3) the trial court abused its discretion by allowing testimony of a witness whose name was not previously disclosed by the State in its list of witnesses.

Taylor Strickland, a narcotics agent with the Kane County Task Force, testified that on October 6, 1981, he was involved in an ongoing drug investigation of the defendant. He and an informant, Billy West, went to a store located in Elgin to purchase a quantity of cocaine from the defendant. Agent Strickland had earlier purchased cocaine from the defendant on September 29 and September 30, 1981, after the informant had introduced Strickland to the defendant. West waited at another location while Strickland remained in his car waiting for the defendant. A short time later, the defendant arrived and got in the back seat of Strickland's car. Strickland asked the defendant if he had the coke, and defendant replied that he did. Defendant then gave Agent Strickland a plastic bag of white powder. Strickland

asked him if it was good coke, and defendant stated that he thought so. Strickland then gave the arrest signal, and defendant was subsequently arrested by several other agents.

Agent Strickland took the bag into custody and transported it back to police headquarters. A field test conducted on the contents showed a negative result as to the presence of cocaine. He then sealed the bag with a clear plastic tape and marked it with a case number, exhibit number, his initials, and the date. Strickland placed the bag in an evidence envelope, sealed it with clear plastic tape, and wrote identifying information and his signature on the outside of the envelope. He then locked the evidence envelope, marked exhibit No. 3, along with the evidence envelopes from the earlier drug sales (Exhibits No. 1 and No. 2), in a police evidence locker. On October 13, 1981, he transported exhibits Nos. 1, 2 and 3 to the Maywood Crime Lab.

Wayne Fieroh, an agent of the Illinois Department of Law Enforcement, substantially corroborated Agent Strickland's testimony. He testified he was involved in the surveillance of the September 29, September 30 and October 6, 1981, drug transactions between Strickland and the defendant. On the two prior occasions, he testified he witnessed Agent Strickland conduct a field test on the contents. He and Strickland marked the plastic bag with the case number, exhibit number, their initials and the date, and then placed the bag in another plastic bag, again marked it with the case number, exhibit number, their initials and the date. They finally placed the bag in an evidence envelope, sealed it and marked their initials on the outside of the envelope as having witnessed Strickland's sealing of the envelope.

The parties stipulated that if Rick Paulas were called he would state that he received three sealed envelopes marked People's exhibits Nos. 1, 2, and 3 and the case number 81 C 3892 from Agent Strickland on October 13, 1981. After receiving these envelopes, Paulas placed his initials, the date, and the agency case number on all three envelopes, and then placed them in the locked vault of the Illinois Department of Law Enforcement Officers in Maywood, Illinois.

On October 21, 1981, Deborah Juricic, chemist for the Illinois Department of Law Enforcement, conducted chemical tests on the substances put within the three evidence envelopes. She testified that she received it from the lab vault on that day and it was sealed when she received it. Before Juricic opened each envelope, she wrote certain identifying information and her initials on each one. Juricic opened the envelope and removed a sealed plastic bag which she marked with the lab case number, the exhibit number, her initials and the date. She

opened the bag and took out an inner plastic bag and observed a white powdery substance. In each case she weighed the exhibit: exhibit No. 1 weighed 6.9 grams, exhibit No. 2 weighed 11.2 grams, and exhibit No. 3 weighed 33.4 grams. She conducted various tests on these substances, maintaining sole possession of the evidence during her testing and keeping each exhibit separate. She completed her testing on exhibits Nos. 1 and 2 on October 21, 1981. Based on the tests she conducted on exhibits Nos. 1 and 2, her opinion was that the substance tested was l-cocaine.

When she proceeded to test exhibit No. 3 On October 21, she observed an empty plastic bag and one sealed plastic bag with white powder inside. She did not run any tests on the empty bag. She was able to complete most of her testing on October 21, with the exception of one test performed by Carl Larson on October 23, 1981, which was necessary in order to determine whether the cocaine present was a derivative of the coca leaf or l-cocaine, a controlled substance. Although she was able to conclude based on the tests she ran that the substance contained cocaine, based on Larson's test results and over the objection of the defense, she was allowed to give an opinion that the substance was a derivative of the coca leaf, a controlled substance.

Carl Larson, over defense counsel's objection that he was not previously listed as a State's witness, was allowed to testify with regard to the test he performed. He testified that he performed a test on a sealed vial he received from Juricic on October 23, 1981. He took the sample to the Joliet Crime Lab for a polarimeter test. The trial court had allowed the defense to interview Larson prior to his testimony during a court recess.

Defendant testified on his own behalf. He stated that on October 6, 1981, he delivered a plastic bag containing white powder to Taylor Strickland. Defendant stated that, through Billy West acting as a middle man, he sold cocaine to Strickland on two prior occasions. Defendant stated he purchased a bottle of mannitol, at West's direction, weighing 14.17 grams and saw the contents placed into a baggie by Billy West. Defendant testified that he had planned to trick Strickland by selling him purely mannitol rather than cocaine. Upon his arrest, defendant stated to the arresting officers that there was no cocaine in the bag. Defendant admitted that he believed he was selling cocaine to Strickland on the September 29 and September 30 deals but denied knowing that the contents of the bag on October 6 contained anything other than pure mannitol, which is not a controlled substance.

Evidence of the two prior sales on September 29 and September

30, 1981, was allowed by the trial court for the limited purpose of showing defendant's knowledge or intent regarding the October 6 transaction.

The jury found the defendant guilty of delivery of a controlled substance containing 30 grams or more of cocaine. The court thereafter sentenced defendant to 10 years' imprisonment. Defendant's amended post-trial motion was denied, and this appeal followed.

Defendant initially contends that he was not proved guilty beyond a reasonable doubt because there were defects in the chain of custody. Specifically, defendant maintains that the presence of an additional plastic bag in the evidence envelope of exhibit No. 3 and a greater amount of a substance than originally placed there by the defendant indicates that a reasonable possibility of tampering exists and, as such, requires a reversal of defendant's conviction.

■■■ While there must be an unbroken chain of possession between the article seized and the article analyzed for its admission into evidence (*People v. Maurice* (1964), 31 Ill. 2d 456, 458; *People v. Tribett* (1981), 98 Ill. App. 3d 663, 673), the foundation for the introduction of objects into evidence may be laid either through their identification by a witness or through establishment of a chain of custody. (*People v. Greer* (1963), 28 Ill. 2d 107, 113; *People v. Tribett* (1981), 98 Ill. App. 3d 663, 673.) In establishing a sufficient chain of possession, the State is not required to exclude all possibility of tampering. (*People v. Marquis* (1974), 24 Ill. App. 3d 653, 662.) In the absence of any tangible suggestion of tampering, alteration, or substitution, it is sufficient if the State can prove a reasonable probability that the article has not been changed in any important respect. *People v. Valentin* (1978), 66 Ill. App. 3d 488, 492.

The record here indicates a reasonable probability that the chain of custody was continuous and that tampering or alteration of the evidence was unlikely. The police observed sufficient protective measures to assure that the evidence obtained from defendant was the evidence admitted at trial. After receiving the bag containing white powder from defendant, the arresting officer, Strickland, placed this evidence in an evidence envelope that he initialed, sealed, and marked with certain identifying information, and placed in a locked safe, along with evidence envelopes marked in a similar manner from two prior drug deals with the defendant. On October 13, Rick Paulas received three sealed envelopes in this condition from Strickland. He in turn initialed them and marked them in the same way. Paulas then placed these envelopes in a laboratory vault. The chemist, Juricic, testified she received the evidence envelopes on October 21 in that same condition.

Defendant relies on *People v. Woessner* (1971), 132 Ill. App. 2d 58, as support for this contention. However, *Woessner* is distinguishable. *Woessner* involved a total breakdown in the State's chain of possession. There the police testified that the contraband seized was kept unsealed for five days and that the officer did not initial, seal or secure the contraband in the police vault that was available.

Certain discrepancies concerning the identification of evidence have been found not sufficient to break the chain of custody as to exclude its admission into evidence. In *People v. Valentin* (1978), 66 Ill. App. 3d 488, the arresting officer testified that he received a blue balloon with a yellow strip containing heroin. It was inventoried by another officer as a blue balloon on the evidence envelope. The chemist who tested the substance stated she removed a green balloon containing the heroin. At trial, none of the officers could identify the green balloon or the tan powder as being the blue and yellow balloon received from defendant. Nonetheless, the court found an unbroken chain of possession was adequately established by the protective measures similar to those in the instant case. In *People v. Scott* (1972), 3 Ill. App. 3d 493, the arresting officer testified that he had placed his initials on a tinfoil packet containing a white powder. At trial, the State was unable to show the officer's initials on the tinfoil, and the police chemist could not recall if there had been any writing on the tinfoil before she examined it. Similarly, the court found that there was an otherwise sufficient showing of continuous custody. See also *People v. Madden* (1978), 57 Ill. App. 3d 107 (addition of time stamp or physician's name to lab sheet not sufficient to break link to suggest tampering).

While the evidence defendant presented raises the possibility of tampering, that evidence is not sufficient to exclude its admission into evidence but may affect the weight the jury will attribute to this evidence. The weight of the evidence or the credibility of witnesses are matters for the trier of fact to determine and will not be disturbed on appeal unless the evidence upon which the verdict is based is so unsatisfactory as to raise a reasonable doubt of the accused's guilt. *People v. Manion* (1977), 67 Ill. 2d 564, 578, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513; *People v. Kleba* (1982), 110 Ill. App. 3d 345, 358.

Defendant next contends that he was not proved guilty beyond a reasonable doubt because the State failed to prove that he had knowledge of the amount delivered.

There is no requirement that the State must prove that defendant had knowledge of the amount delivered in order to sustain a convic-

tion for the manufacture or delivery of a controlled substance. Section 401 of the Controlled Substances Act (Ill. Rev. Stat. 1981, ch. 56½, par. 1401) provides in pertinent part that it is unlawful for any person to knowingly manufacture or deliver, or possess with the intent to manufacture or deliver, a controlled substance. Further, as pertinent to this case, the section also provides that any person who violates this act with respect to 30 grams or more of any substance containing cocaine is guilty of a Class X felony. (Ill. Rev. Stat. 1981, ch. 56½, par. 1401(a)(2).) In order to sustain a conviction under the Act, so far as the element of knowledge is concerned, the State need only prove that a defendant knowingly delivered any amount of a controlled substance. *People v. Cortez* (1979), 77 Ill. App. 3d 448, 451.

*People v. Kadlec* (1974), 21 Ill. App. 3d 289, 296, the sole authority upon which defendant's argument rests, does not support his position. In *Kadlec* the defendant was charged with knowingly delivering more than 200 grams of a substance containing amphetamine, and the court stated as follows:

> "The crime with which we are here concerned is that of '[U]nlawful delivery of a controlled substance.' The crime is committed by the delivery of a controlled substance regardless of the amount thereof. The particular amount of the controlled substance relates only to the extent of the penalty which may properly be imposed.
>
> When the State seeks the maximum penalty permitted by the statute, by alleging in the indictment the delivery of 200 grams or more (as in this case) it becomes incumbent not only to prove delivery of 200 grams or more but the issue (unless waived) must be presented to the jury." (21 Ill. App. 3d 289, 296.)

While the *Kadlec* court held that the State did have the burden of proving the amount delivered where the maximum penalty was sought, as in the present case, there is no suggestion whatsoever either in the above quotation or elsewhere in the *Kadlec* case that the State must prove that defendant had knowledge of the amount delivered.

The only requirement regarding knowledge is clearly set forth in the statute. "[I]t is unlawful for any person knowingly to manufacture or deliver, or possess with intent to manufacture or deliver, a controlled substance." (Ill. Rev. Stat. 1981, ch. 56½, par. 1401(a).) It is not necessary that the State allege or prove that defendant had knowledge of the amount delivered.

■■ ■ Finally, defendant argues that the trial court abused its dis-

cretion in allowing a previously unlisted State witness to testify at trial.

The State, upon motion of the defense, is required as part of discovery procedure to provide a list of persons whom the State intends to call as witnesses in order to assure defense counsel adequate time to prepare. (87 Ill. 2d R. 412(a)(i).) While the State has a duty to disclose at the earliest opportunity, it is within the trial court's discretion to permit a previously unlisted witness to testify at trial, and, absent a showing of surprise or prejudice to the defense, a reviewing court will not find an abuse of discretion. *People v. Jordan* (1967), 38 Ill. 2d 83, 93; *People v. Banks* (1981), 102 Ill. App. 3d 877, 881, *cert. denied* (1982), 459 U.S. 871, 74 L. Ed. 2d 132, 103 S. Ct. 158.

Defense counsel was presented with an amended list of witnesses by the State on the morning set for trial. The State claimed it was not aware until the week prior to trial that one of the tests performed by the witness the State intended to call was performed by another chemist, Carl Larson. Larson had performed a test on the substance from the October 6 sale which determined whether the substance was organic or synthetic. Organic or 1-cocaine is a controlled substance. Synthetic cocaine is not a controlled substance. Larson testified that the results of his testing showed an organic compound. Larson made a verbal report of his findings to the State's chemist, Juricic. Juricic had earlier subjected the substance to various tests and concluded at trial, based on her findings, that the substance she gave Larson to test was cocaine. Upon completion of Larson's test, Juricic was then able to conclude that the substance tested was 1-cocaine, a controlled substance.

Defendant, relying on *People v. Millan* (1977), 47 Ill. App. 3d 296, claims that he was prejudiced by Larson's testimony because, without adequate opportunity to prepare, the defense was not able to effectively cross-examine Larson and Juricic. In *Millan* the State first disclosed its intention to call defendant's accomplice, who had earlier pleaded guilty, as a witness against him after trial had commenced. When the defendant in *Millan* learned of the State's intention to call his accomplice, he moved for a continuance which prompted the State to withdraw the witness. However, after trial commenced, the State later called the witness in its case in chief over defense counsel's objection. The defendant was allowed to interview him prior to his testimony. The *Millan* court ruled that there was no justification for the State to wait until trial when the witness had entered a guilty plea three weeks earlier. A "hurried interview" with the witness during trial was not a satisfactory substitute for prompt disclosure by the

State. 47 Ill. App. 3d 296, 300.

Defense counsel here was aware that the State would present a witness regarding the results of a test upon the substance from the October 6 sale. The State was not aware of Larson's test because his report to Juricic was verbal. Therefore, the State was unaware of the existence of Larson's testimony until shortly prior to trial and could not have become aware of its existence in the exercise of due diligence. Unlike *Millan,* the State's actions do not indicate a deliberate design by the State to withhold disclosing its intention to call Larson as a witness.

Moreover, even if the State failed to exercise due diligence, noncompliance with Rule 412 does not require reversal absent a showing of prejudice. (*People v. Greer* (1980), 79 Ill. 2d 103, 120.) Larson's testimony related only to the test he performed. His testimony was not critical in proving defendant's guilt, as distinguished from *Millan.* His testimony enabled the witness Juricic to conclude that the substance from the October 6 sale was 1-cocaine, which testimony may otherwise have been excluded as hearsay.

Finally, defendant was given the opportunity to interview Larson before he testified. The defense sought no continuance to further prepare but proceeded with the trial. (*People v. Jordan* (1967), 38 Ill. 2d 83, 93; *People v. Banks* (1981), 102 Ill. App. 3d 877, 881, *cert. denied* (1982), 459 U.S. 871, 74 L. Ed. 2d 132, 103 S. Ct. 158; *People v. Watson* (1979), 76 Ill. App. 3d 931, 937.) Accordingly, there was no abuse of discretion by the trial court nor any prejudice to defendant by Larson's testimony, first discovered just prior to trial, where defendant made no request for a continuance and was not otherwise forced to proceed without additional time.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

SEIDENFELD, P.J., and HOPF, J., concur.