Wilson H. Hancock, the appellant, was convicted of trafficking in marijuana and was sentenced to 15 years' imprisonment. He was also fined $25,000 and was ordered to pay court costs and $5,000 to the Crime Victims' Compensation Fund. In this appeal, Hancock raises two issues, both of which are related to the admissibility of the evidence of the testing of the plant material alleged to have been seized from him.
The appellant was arrested for the instant offense on December 14, 1988, at the residence of one Michael Wilson. Alcoholic Beverage Control Board Investigator Michael Gulledge testified that a plastic bag containing a compressed block of green plant material was taken from the appellant at the time of his arrest. Investigator Gulledge placed the plastic bag taken from the appellant in another plastic bag which he obtained from the Wilson household. This outer plastic bag was variously described by witnesses and the prosecutor as light green, green, blue-green, or blue in color. There was no testimony that Investigator Gulledge sealed the "blue" outer bag. Within five to ten minutes, Investigator Gulledge gave the "blue" bag and its contents to Lieutenant Paul Surrey of the Baldwin County Sheriff's Department.
Lieutenant Surrey testified that the plant material seized from the appellant was in "two dark green-type garbage bags, lawn trash bags."[1] According to Surrey, Investigator *Page 1042 
Gulledge placed these bags in a lighter "green" bag which he then gave to Surrey. Surrey stated that he "secured" the "green" bag in the trunk of his car where it remained until the next day, December 15, when he delivered it to the Department of Forensic Sciences in Mobile, Alabama. Lieutenant Surrey first stated that the individual at the Department of Forensic Sciences to whom he delivered the "green" bag was Gary Wallace. Upon further questioning by the prosecutor, Surrey stated that he turned this bag over to Brian Delmas.
Investigator Charlie Jones of the Baldwin County Sheriff's Department testified that, on March 1, 1989, he went to the Department of Forensic Sciences in Mobile where he received from Debbie Sennett a box which was sealed with red evidence tape. That same day, Investigator Jones turned this box over to Baldwin County Chief Deputy Sheriff Larry Milstid who placed it in an evidence locker. Deputy Milstid testified that only he, the Sheriff, and Lieutenant Harry D'Olive had access to this locker.
On the day the trial started, Deputy Milstid brought to the District Attorney's Office the box which had been given to him by Investigator Jones. This box was opened in Milstid's presence by Gary Wallace, a drug analyst with the Department of Forensic Sciences. Milstid observed a "light green" plastic bag in the box. It appears that this "light green" bag contained loose green plant material which was not enclosed within another plastic bag. Wallace and Milstid weighed this bag of plant material on postage scales located in the courthouse and obtained a weight of eight pounds, eight ounces. Wallace and Milstid then went to a drugstore nearby and weighed the plastic bag of plant material on the drugstore's United Parcel Service scales. The weight on these scales was "close to nine pounds."
At trial, the box and its contents were designated as State's Exhibit 1. Investigator Jones identified the box as the one he had received on March 1, 1989, from Debbie Sennett at the Department of Forensic Sciences in Mobile. Deputy Milstid identified the box as the one he had been given by Investigator Jones and stated that the box, when he removed it from the evidence locker on the morning of trial, was sealed and appeared to be in the same condition as when he had received it from Jones. Milstid also testified to drug analyst Wallace's opening of the box and to his and Wallace's weighing activities.
Investigator Gulledge testified that the "blue" plastic bag contained in State's Exhibit 1 appeared to be the same bag into which he had placed the plastic bag and block of plant material seized from the appellant. Gulledge stated that the "blue" bag had his "identifying mark," a "number one in red that's circled," on it. When instructed by the prosecutor to "see if there's any other identifying mark[s] on it," Gulledge replied, "There's initials of 'D' 'W' 'S' and 'G' 'W' on it and 89-81071 appears to be some sort of case number for somebody on there." Gulledge testified that the "blue" bag "appear[ed] to contain the plant material that we seized from the Defendant," but that the plant material was "in a different form than when we seized it." On cross-examination, Gulledge acknowledged that there was nothing unique about the plant material contained in State's Exhibit 1 and that this plant material was "broken up" whereas a "block structure" of plant material had been seized.
Lieutenant Surrey testified that the "green" plastic bag in State's Exhibit 1 appeared to be the bag given to him by Investigator Gulledge. Like Investigator Gulledge, Surrey stated that the plant material was in a different form than when seized: "It appears that the stuff has been broken up and analyzed. When we gave it to the lab, it was in one big compressed block."
Brian Delmas did not testify, although there was testimony that he was a former employee of the Department of Forensic Sciences in Mobile. Debbie Sennett, identified as a drug analyst with the Department of Forensic Sciences in Mobile, was ill at the time of the appellant's trial, and she did *Page 1043 
not testify either. In fact, the only person from the Department of Forensic Sciences to testify was drug analyst Gary Wallace.
Shortly after Wallace began testifying, the Jury was excused from the courtroom. Wallace thereafter testified that Ms. Sennett had initially tested the plant material allegedly taken from the appellant. It was established that Wallace had brought with him Ms. Sennett's "working papers" and that there was a discrepancy between the weight of the plant material reported by Ms. Sennett and Wallace's own results in weighing the plant material. When questioned by the trial judge, Wallace could not explain this discrepancy, nor could he verify the accuracy of either of the scales which he had utilized that morning. The trial judge then excused Wallace from further testimony that day, instructing Wallace to "take that and you weigh it and examine it the way you need to and be satisfied as to what you are testifying to."
The next day, Wallace returned to the witness stand. Through Wallace and over the appellant's strenuous objection, the prosecutor was permitted to introduce Ms. Sennett's "working papers." These papers identified the plant material as marijuana and stated the weight thereof as five pounds, fifteen ounces. Wallace then testified to his own testing of the plant material contained in State's Exhibit 1 and stated that, in his opinion, the plant material was marijuana. He also stated that the weight of the marijuana was eight pounds, seven ounces. On cross-examination, Wallace conceded that he could not explain the "growth" of the plant material in the time which elapsed between Ms. Sennett's testing and the trial.
 I
On this appeal, the appellant argues that Ms. Sennett's papers were not properly certified and were, therefore, not admissible under Ala. Code 1975, § 12-21-35, providing for the admission into evidence of certain properly certified government documents. At trial, the appellant also objected to the introduction of Sennett's worksheet and reports on the ground that their admission denied him his constitutional right to confront the witnesses against him. That issue has not been pursued in this appeal. Consequently, we distinguish this case from Grantham v. State, 580 So.2d 53 (Ala.Cr.App. 1991), wherein this Court held that, where there was no showing that the drug analyst was unavailable to testify, the use of the drug analyst's report as the sole evidence of an element of the offense, i.e., that the substance seized was in fact marijuana, violated the defendant's rights under the confrontation clause of the sixth amendment.
Ms. Sennett's "working papers" consisted of a worksheet, a draft report, and a final report. Wallace had with him the original worksheet and draft report, but he had a copy of the final report. He testified that the "original [final report] is on file in the Auburn laboratory, that's our headquarters" and that Dr. Carlos Rabren, the Director of the Department of Forensic Sciences, was the actual custodian of all the papers.
The prosecutor laid the predicate for the admission of these documents as business records under Ala. Code 1975, §§ 12-21-43
and 12-21-44. In order for business records, or copies thereof, to be properly admitted, they must be "authenticated," but they need not be "certified." See §§ 12-21-43, 12-21-44; C. Gamble,McElroy's Alabama Evidence § 254.01(3) (3d ed. 1977). A "certified copy" is "[a] copy of a document or record, signed and certified as a true copy by the officer to whose custody the original is intrusted." Black's Law Dictionary 228 (rev. 6th ed. 1990). In contrast, "[t]estimony by any witness, frequently the custodian of the record, that the document now exhibited to him is a record of the business; that he knows the method (i.e., the standard operating procedure) used in the business of making records of the kind now exhibited to him; and that it was the regular practice of the business to make records of such kind and to make them at the time of the event recorded or within such specified period thereafter as could be found by the trier of fact to be reasonable, is a sufficient *Page 1044 
authentication of [a business] record to require its admittance into evidence." C. Gamble, McElroy's Alabama Evidence § 254.01(3) (3d ed. 1977).
However, Sennett's papers were prepared as part of her duties as an employee of the Department of Forensic Sciences and, at least her final report, was a "public record which [the Director of Forensic Sciences] is required to keep in his office." Seals v. State, 282 Ala. 586, 604, 213 So.2d 645, 663
(1968); Bickerstaff v. State, 369 So.2d 315, 316
(Ala.Cr.App. 1979), overruled on other grounds, Grantham v.State, 580 So.2d 53 (Ala.Cr.App. 1991). See § 36-18-2
(Supp. 1990) ("[t]he director [of the Department of Forensic Sciences] shall keep original reports of all investigations that he conducts in his office"). Copies of public records are admissible under § 12-21-35, "when certified by the propercustodian thereof." (Emphasis added.) See also Seals v.State, 282 Ala. at 604, 213 So.2d at 663. An original document which is a public record, however, is admissible when it "is identified as such." Sims v. Kent, 221 Ala. 589, 591,130 So. 213, 215 (1930). See also Ramage, Parks Co. v. Folmar,219 Ala. 142, 147, 121 So. 504, 508 (1929); McElroy's AlabamaEvidence § 218.02.
It appears that the trial judge admitted these documents, none of which were certified by Dr. Rabren, as public records. There was a lengthy and heated discussion out of the presence of the jury concerning the admission of Ms. Sennett's papers. The State initially maintains that the issue of the non-certification of these papers was not properly preserved because defense counsel made references to the "business record exception" in connection with his objection that the papers were not certified and never brought to the attention of the trial judge § 12-21-35, which relates to public records. However, the trial judge specifically referred to Scofield v.State, 496 So.2d 96 (Ala.Cr.App. 1986), in ruling that these papers were admissible. In Scofield, we held that a "properlycertified" copy of a lab report prepared by the Department of Forensic Sciences "was admissible under the provisions of §12-21-35." 496 So.2d at 99 (emphasis added). Scofield has since been overruled on this point to the extent that it conflicts with our holding in Grantham v. State, 580 So.2d 53
(Ala.Cr.App. 1991). However, from this reference and other statements made by the trial judge during this discussion, we think that the judge was well aware of the basis of counsel's objection.
Sennett's final report was clearly a public record and the copy thereof should have been certified as required by §12-21-35. However, Wallace identified the worksheet and draft report as the originals prepared by Ms. Sennett. Assuming that these two documents were public records, no certification was required for their admission. Since the worksheet and draft report were admitted, the admission of the uncertified copy of the final report, which contained the same information, was harmless error. See Rule 45, A.R.App.P.
The sole issue presented on appeal with regard to the admission of Ms. Sennett's papers is that these papers were not properly certified as required by § 12-21-35. The questions of (1) whether the worksheet and draft report were technically public records under § 36-18-2 and § 12-21-35 and (2) whether the three documents were inadmissible on some other ground are not presented in this appeal, and we specifically decline to address those questions.
 II
The appellant contends that drug analyst Wallace should not have been permitted to testify as to his testing of the plant material because there was a break in the chain of custody of the plant material. Relying heavily on the two and one-half pound discrepancy in the weights reported by Wallace and Sennett, he argues that there was no showing that the plant material tested by Wallace was the same plant material initially seized from him.
It is well settled that
 " '[t]he purpose for requiring that the chain of custody be shown is to establish to a reasonable probability that there has been no tampering with the evidence. *Page 1045 
"The evidence need not negate the most remote possibility of substitution, alteration, or tampering with the evidence, but rather, must prove to a reasonable probability that the item is the same as, and not substantially different from, the object as it existed at the beginning of the chain" ' "
Ex parte Williams, 505 So.2d 1254, 1255 (Ala. 1987) (citations omitted), quoted in Ex parte Williams, 548 So.2d 518, 520
(Ala. 1989).
In this case, Investigator Gulledge seized a compressed block of plant material from the appellant on the night of December 14, 1988. Gulledge testified that the plant material was ina plastic bag when taken from the appellant and that he placed this bag into another bag. Although there was no testimony that Gulledge sealed the outer bag, he testified that he gave the bag to Lieutenant Surrey within five to ten minutes.
It appears that Lieutenant Surrey inspected the contents of the bag given to him by Gulledge, for he testified that the plant material was in block form and was enclosed withintwo plastic bags when seized from the appellant. Surrey "secured" the bag given to him by Gulledge in the trunk of his car and delivered it to the Department of Forensic Sciences the next day, December 15, 1988. He testified that the outer bag and its contents were in the same condition when he delivered them to the Department of Forensic Sciences as when he received them from Investigator Gulledge.
Ms. Sennett's draft and final reports state that "[o]n December 15, 1988, Paul Surrey of the Baldwin County Sheriff's Office submitted to this laboratory an item of drug evidence and requested that the material submitted be identified." Ms. Sennett's reports bear the case number "89-81071" and identify the evidence received from Surrey as "[o]ne green plastic bag containing two (2) black plastic bags containing green plant material." There is also a notation that "[t]he plant material was removed from the two (2) black plastic bags. The black plastic bags were given to Brian Delmas for fingerprint analyses." A notation on her worksheet reveals that Ms. Sennett "placed evid[ence] in a cardboard box initialed DWS." Her reports indicate that this box was "sealed with clear cellophane tape, masking tape and evidence tape." Ms. Sennett's final report is dated January 6, 1989.
Investigator Jones testified that he received a sealed box from Ms. Sennett on March 1, 1989. Jones turned this box over to Deputy Milstid, who placed it in a limited access evidence locker. Milstid removed this box from the locker on the morning of appellant's trial and later observed drug analyst Wallace open it. The box contained a plastic bag of loose plant material. This bag had on it the "identifying mark" of Investigator Gulledge as well as the number 89-81071, which corresponds to the case number on Ms. Sennett's reports.
To say that the State's proof in this case regarding the chain of custody of the plant material was somewhat lax would be an understatement. There was no testimony that Investigator Gulledge sealed the outer bag into which he placed the bag and plant material seized from the appellant. However, both Gulledge and Lieutenant Surrey testified that the plant material seized from the appellant was in block form. Gulledge also testified that the contents of the outer bag were in his possession from the time they were seized until he turned them over to Surrey and that the items were in the same condition when he turned them over to Surrey as when he seized them from the appellant.
The testimony of Investigator Gulledge and that of Lieutenant Surrey was in conflict as to whether the block of plant material was in one or two plastic bags when seized from the appellant. "[C]onflicts of testimony concerning the chain of custody go to the credibility rather than the admissibility of the evidence." Lott v. State, 456 So.2d 857, 861
(Ala.Cr.App. 1984). Similarly, the State's failure to clearly establish both the identity of the individual at the Department of Forensic Sciences to whom Lieutenant Surrey delivered the plant material and who had possession of the plant material before Ms. Sennett began her *Page 1046 
analysis goes to the credibility and weight of the evidence as opposed to its admissibility. See McCray v. State,548 So.2d 573, 575-76 (Ala.Cr.App. 1988).
Both Gulledge and Surrey testified that the plant material had been in a compressed block when seized from the appellant, but was in a different form at the time of the trial. The reason for this difference in form was not clearly explained by any witness. Compare Langham v. State, 196 Ga. App. 71, 71-72,395 S.E.2d 345, 346 (1990) (laboratory witness explained why rock cocaine, which was seized in the form of "bricks or slabs," had a "crumbled appearance" at trial). However, Wallace testified that he "macroscopically or visually" examined the plant material by "spread[ing] it out on a piece of white paper." Ms. Sennett's worksheet indicated that she, too, performed a macroscopic examination of the plant material. In view of this fact, and Lieutenant Surrey's statement that it appeared that the block of plant material "ha[d] been broken up and analyzed," it is fair to infer that the change in form (from compressed block to loose material) was occasioned by Ms. Sennett's testing of the plant material.
The unexplained two and one-half pound discrepancy in the weight of the plant material as reported by Ms. Sennett and the weight determined by Wallace is a matter of concern to this Court as it "raises the possibility of tampering." People v.Ziehm, 120 Ill. App.3d 777, 76 Ill.Dec. 188, 192,458 N.E.2d 588, 592 (1983). Accord, People v. Zipprich,141 Ill. App.3d 123, 95 Ill.Dec. 535, 538,490 N.E.2d 8, 11 (1986). "However, the mere possibility of tampering alone will not render the chain broken or the evidence inadmissible." Whitt v. State, 483 N.E.2d 49,51 (Ind. 1985). Where the State's evidence otherwise establishes to a reasonable probability that the substance introduced at trial is the same as the substance seized, discrepancies in the weight of the substance go to the credibility of that evidence, not its admissibility. See UnitedStates v. Chaplinsky, 579 F.2d 373, 374-75
(5th Cir.), cert. denied, 439 U.S. 1050,99 S.Ct. 731, 58 L.Ed.2d 711 (1978); People v. Ziehm, 76 Ill.Dec. at 192, 458 N.E.2d at 592; People v. Martinez, 151 A.D.2d 965,542 N.Y.S.2d 64, 65, appeal denied, 74 N.Y.2d 814,546 N.Y.S.2d 572, 545 N.E.2d 886 (1989); Gonzales v. State,672 S.W.2d 618, 620 (Tex.App. 1984).
Although it is an extremely close question, we think that the State's evidence established to a reasonable probability that the plant material analyzed by Wallace was the same plant material seized from the appellant. It must be remembered that "the State is not required to exclude all possibility of tampering," People v. Ziehm, 76 Ill.Dec. at 191, 458 N.E.2d at 591, and, although there was a discrepancy in the weights of the plant material as reported by Ms. Sennett and Wallace, there was absolutely no evidence of any actual tampering, such as an improper opening of the box which Ms. Sennett had sealed. See Langham v. State, 196 Ga. App. at 71-72, 395 S.E.2d at 346;Richards v. State, 189 Ga. App. 146, 146-47, 375 S.E.2d 278,279 (1988). Moreover, the weight "discrepancies were clearly placed before the trier of fact. It was the jury's prerogative to weigh these facts and come to a reasonable conclusion thereon." Whitt v. State, 483 N.E.2d at 51. Consequently, we find no error in the admission of Wallace's testimony concerning his testing of the plant material.
For the reasons stated above, the judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] As is discussed in Part II below, there is a conflict between the testimony of Investigator Gulledge and that of Lieutenant Surrey as to whether the plant material was in one plastic bag or two when seized from the appellant.