THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EDDIE B. CARROLL, JR., Defendant-Appellant.

Third District   No. 3—91—0711

Opinion filed April 10, 1992.

Thomas A. Karalis, of State Appellate Defender's Office, of Ottawa, for appellant.

Marshall E. Douglas, State's Attorney, of Rock Island, and Howard R. Wertz, of Lynwood (John X. Breslin, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

The defendant, Eddie B. Carroll, Jr., was convicted by a jury of unlawful possession of cannabis with the intent to deliver (Ill. Rev. Stat. 1989, ch. 56½, par. 705(c)). The trial court sentenced him to four years' imprisonment. He appeals his conviction.

The record reveals that at trial, police officer Steven Palcat testified that on May 6, 1991, he observed Eddie Carroll, Jr., come into the station to pay a parking fine. Knowing that Carroll's driver's license had been suspended, Palcat followed him out of the station, where he saw him get into a car and drive away. Palcat pursued Carroll in his patrol car. When he caught up with Carroll and activated his emergency lights, Carroll accelerated and tried to elude Palcat. Near the end of the two-mile chase, Palcat saw Carroll throw something out of the driver's side window of his car.

After Carroll stopped, Palcat placed him in the custody of another officer. He then searched Carroll's car, but found nothing. Palcat also informed two other officers by radio to search the location where Palcat had observed the defendant throw something out of the car window.

Police officer Robert Ellis testified that he and police officer Roy Dowell were called to search a block-long area of 19th Street. According to Ellis, he and Dowell located between 14 and 16 small plastic bags containing a green leafy substance. Ellis transported the evidence to the station, where the items were inventoried and sealed in an evidence bag.

Ellis conducted a body search of Carroll and found a blue plastic case containing a weighing scale in the defendant's rear hip pocket. Ellis recorded the scale on his inventory report, marked his badge number on the scale, and placed it in the evidence bag with the baggies. He then sealed the evidence bag so that it could not be tampered with. At trial, Ellis testified that the bags entered into evidence appeared to be the same bags. He was able to specifically identify two of the bags because he had written his badge number on them. However, it appears he had difficulty identifying other markings because he did not have his glasses at trial.

There were some inconsistencies in Ellis' testimony. He initially testified that he placed into the evidence bag "[f]our clear plastic baggies containing a green leafy substance, one baggie containing fourteen separate packed baggies *** [and] one small weighing scale." Later, when asked how many baggies there were, he stated, "Right at fourteen and three. Then fourteen and—seventeen I believe if I recall offhand." However, on cross-examination, Ellis stated that 11 individually wrapped bags were found. He indicated that he found the majority of them and Dowell gave him two or three others. His report indicated that 14 bags had been found. Additionally, on the yellow inventory sheet he filled out when he placed the evidence into the evidence bag, he wrote that he placed 14 bags containing a green leafy substance into the evidence bag. Finally, at trial, Ellis appeared to be unable to find where he had written his badge number on the scale.

Officer Dowell testified that he assisted Officer Ellis in collecting the evidence from 19th Street. He testified that he found approximately six clear plastic baggies containing a leafy substance, which he turned over to Officer Ellis. Dowel indicated that the baggies he recovered resembled those that had been entered into evidence.

Detective Richard Scott testified that on May 7, 1991, he retrieved the evidence bag from the evidence locker so he could perform a field test on part of the contents. He sliced the evidence bag open with a knife and removed one of the plastic baggies from inside. After performing a field test on the material inside the baggie, he placed the baggie back into the evidence bag and sealed the bag with red tape. On the yellow evidence sheet attached to the bag, Detective Scott wrote that there were 14 baggies containing cannabis in the evidence bag. He indicated that he did not count all the bags but instead went by the figure Officer Ellis had previously written. He then had the evidence bag mailed to the Morton crime lab.

Michelle Landrum testified that she was a forensic scientist employed by the Illinois State Police at the Morton forensic science lab. Landrum received the sealed package and opened it. Inside, she found a large ziplock bag holding 14 smaller plastic baggies containing a substance that her tests confirmed to be cannabis. Outside the ziplock bag, she found a scale and three other bags containing cannabis. The total weight of the cannabis from the 14 bags was 13.48 grams, while the other three bags contained a total of 4.44 grams. After completing her tests, Landrum sealed the bag using blue evidence tape.

Other witnesses were called to testify. However, we need not set forth their testimony since it is not relevant to this appeal.

The only issue raised on appeal is whether the trial court erred in allowing the baggies of cannabis and the scale into evidence. Carroll claims that they should not have been admitted because the testimony at trial revealed that unexplained changes to the evidence had taken place during the course of the State's custody of it. He contends that the instant case is similar to *People v. Terry* (1991), 211 Ill. App. 3d 968, 570 N.E.2d 786, where evidence was found to be improperly admitted because the State failed to show that the substance seized was not altered or substituted.

The State, on the other hand, contends that the cannabis and scale were properly admitted. It first argues that this case is factually quite different from *Terry*. Additionally, the State argues that while a defendant may present evidence raising the possibility of tampering, this is not sufficient to exclude its admission into evidence, but only affects the weight the jury will attribute to the evidence. *People v. Ziehm* (1983), 120 Ill. App. 3d 777, 458 N.E.2d 588.

Real evidence is generally admissible when an adequate foundation is laid to establish that the item is the one involved in the alleged offense and is substantially unchanged since its seizure by authorities. (*People v. Slaughter* (1986), 149 Ill. App. 3d 183, 500 N.E.2d 662.) Additionally, the State must demonstrate a reasonable probability that the evidence has not been altered or substituted. (*People v. Schubert* (1985), 136 Ill. App. 3d 348, 483 N.E.2d 600.) However, the mere possibility of tampering is not sufficient to exclude the admission of evidence, but only affects the weight the jury may attribute to it. (*People v. Ziehm* (1983), 120 Ill. App. 3d 777, 458 N.E.2d 588.) The weight of the evidence and the credibility of witnesses are matters for the trier of fact to determine and will not be disturbed on appeal unless the evidence upon which the verdict is based is so unsatisfactory as to raise a reasonable doubt of the defendant's guilt. *People v. Ziehm* (1983), 120 Ill. App. 3d 777, 458 N.E.2d 588.

We begin by noting that *People v. Terry* (1991), 211 Ill. App. 3d 968, 570 N.E.2d 786, involved a situation where the arresting officer unequivocally stated that he confiscated 32 packets of white powder with an estimated weight of 8 grams from a third-floor apartment. Yet, the envelope sent to the police department chemist contained 42 packets of a yellow uremic substance which weighed approximately 12 grams. The defendant claimed that this was because the substance from his arrest was commingled with that found in another arrest. The defendant's story was lent credence by the fact that another narcotics arrest occurred on the first floor of the same building less than 10 minutes prior to the arrest of the defendant. The appellate court held the admission of the substance to be in error, noting that the evidence was "wholly insufficient" to compensate for the discrepancies between what was seized and what was sent to the lab.

In the instant case, the testimony of Officer Ellis was at times unclear and inconsistent. This created the *possibility* that the evidence inventoried by him was different from that which arrived at the lab. However, unlike *Terry*, the remainder of the evidence in the instant case created a reasonable probability that the evidence had not been altered or substituted.

Although it was unclear from Ellis' testimony exactly how many baggies were found, there was no indication that the substance underwent any change in appearance between the time of the inventory and the time it reached the lab. In fact, Officers Ellis and Dowell both testified that the bags entered into evidence appeared to

be the same ones they found on the street. Further, although Ellis was unable to identify some of the markings he placed on the evidence, he was able to positively identify the markings on at least two of the baggies.

Under these circumstances, the discrepancies merely presented a weight-of-the-evidence question for the jury to resolve. The trial court therefore properly allowed the baggies of cannabis and the scale into evidence.

The judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

GORMAN and McCUSKEY, JJ., concur.