# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 19, 2023

Lyle W. Cayce
Clerk

No. 21-50406

United States of America,

*Plaintiff—Appellee*,

*versus*

Alvaro Castillo, Jr.,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:19-CR-780-1

Before Jones, Southwick, and Ho, *Circuit Judges*.

James C. Ho, *Circuit Judge*:

The Fourth Amendment protects the right of the American people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Today we address what searches are reasonable and unreasonable at the intersection of two established lines of Fourth Amendment precedent—when the government searches a cell phone at the border.

On the one hand, the Supreme Court has long held that "searches made at the border . . . are reasonable simply by virtue of the fact that they

occur at the border," "pursuant to the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country." *United States v. Ramsey*, 431 U.S. 606, 616 (1977).

But on the other hand, the Court has also made clear that searches of modern devices like cell phones can be unusually intrusive. After all, "[c]ell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person." *Riley v. California*, 573 U.S. 373, 393 (2014). Depending on the extent of the search, the government could theoretically access virtually every aspect about one's life based on a single handheld device.

Our circuit has not yet articulated the standard that governs cell phone searches at the border. In some circuits, the governing standard depends on the extent of the search—whether the government is conducting merely a manual search of what is immediately available on the device, or a more intrusive forensic search. The circuits are divided over whether reasonable suspicion is required for a forensic search of a cell phone at the border. But every circuit to have addressed the issue has agreed that no individualized suspicion is required for the government to undertake a manual border search of a cell phone.

We see no reason to depart from the consensus of the circuits. And adopting that consensus is all we need to do to decide this appeal. We accordingly affirm.

## I.

The parties jointly stipulated to the facts that govern this appeal. Defendant Alvaro Castillo and two others crossed the international bridge to Presidio, Texas, in a recreational vehicle (RV) that was towing a passenger car behind it, at around midnight. Upon reaching the port of entry into the United States, the RV was sent to secondary inspection—as is standard

operating procedure when it comes to vehicles of that size entering the country at that time of night. Defendant and his companions told border agents that they had nothing to declare.

During the search of the RV, an officer found a .357 revolver taped between two frying pans that had been wrapped in packing foam and taped inside the oven. The officer also found ammunition for a .357 inside a pressure cooker that had been taped shut, as well as evidence of marijuana inside of luggage.

Defendant was placed in a holding cell. He admitted to owning the contraband. He also provided the passcode to unlock his cell phone to a Homeland Security Investigations special agent.

The agent manually scrolled through various apps. As a result, he found what he believed to be child pornography in the photo section of Defendant's phone.

Based on those initial findings, various agents conducted a more intrusive forensic search of the phone. They also conducted both manual and forensic searches of other electronic devices in Defendant's possession. Those efforts produced additional child pornography images.

Defendant was subsequently indicted on six charges involving child pornography. He subsequently moved to suppress the evidence obtained from the search of his devices. After a hearing, the district court refused to suppress the child pornography. Defendant was found guilty on all six counts and sentenced to 720 months imprisonment and a life term of supervised release. He filed a timely notice of appeal.

A district court's factual findings on a motion to suppress are reviewed for clear error, and the court's ultimate conclusions on whether the Fourth Amendment was violated are reviewed de novo. *United States v.*

*Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010).  The evidence is reviewed in the light most favorable to the prevailing party unless that view is inconsistent with the court's findings or is clearly erroneous in light of the evidence as a whole.  *Id.*

## II.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated."  U.S. CONST. amend. IV.  "[W]arrantless searches are typically unreasonable where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing."  *Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018) (quotation omitted).  "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement."  *Riley*, 573 U.S. at 382.

The border search exception is a "longstanding, historically recognized exception to the Fourth Amendment's general principle that a warrant be obtained" for a search.  *Ramsey*, 431 U.S. at 621.  "[T]he border-search exception allows officers to conduct '*routine* inspections and searches of individuals or conveyances seeking to cross . . . borders' *without any particularized suspicion of wrongdoing*."  *United States v. Aguilar*, 973 F.3d 445, 449 (5th Cir. 2020) (quoting *Ramsey*, 431 U.S. at 619) (emphasis added).  Moreover, even "[s]o-called 'nonroutine' searches need only reasonable suspicion, not the higher threshold of probable cause."  *United States v. Molina-Isidoro*, 884 F.3d 287, 291 (5th Cir. 2018).  "For border searches both routine and not, no case has required a warrant."  *Id.*

The "scope of a search conducted under an exception to the warrant requirement must be commensurate with its purposes."  *Arizona v. Gant*, 556 U.S. 332, 339 (2009).  The border search exception reflects "the long-

standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country." *Ramsey*, 431 U.S. at 616. "The Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border" and has been recognized "since the beginning of our Government." *United States v. Flores-Montano*, 541 U.S. 149, 152–53 (2004). "Historically such broad powers have been necessary to prevent smuggling and to prevent prohibited articles from entry." *Ramsey*, 431 U.S. at 619.

Accordingly, courts have allowed a variety of border searches without requiring either a warrant or reasonable suspicion. *See*, *e.g.*, *Flores–Montano*, 541 U.S. at 155 ("the Government's authority to conduct suspicionless inspections at the border includes the authority to remove, disassemble, and reassemble a vehicle's fuel tank"); *Ramsey*, 431 U.S. at 620 ("custom officials could search, without probable cause and without a warrant, envelopes carried by an entering traveler, whether in his luggage or on his person," and "no different constitutional standard should apply simply because the envelopes were mailed, not carried"); *United States v. Chaplinski*, 579 F.2d 373, 374 (5th Cir. 1978) ("At the border, customs agents need not have a reasonable or articulable suspicion that criminal activity is involved to stop one who has traveled from a foreign point, examine his or her visa, and search luggage and personal effects for contraband.").

To be sure, modern cell phones are fundamentally distinct from other personal items. As the Supreme Court observed in *Riley*, "many of these devices are in fact minicomputers that also happen to have the capacity to be used as telephones." 573 U.S. at 393. "One of the most notable distinguishing features of modern cell phones is their immense storage capacity." *Id.* "Before cell phones, a search of a person was limited by physical realities and tended as a general matter to constitute only a narrow intrusion on privacy." *Id.* But today, "the possible intrusion on privacy is

not physically limited in the same way when it comes to cell phones." *Id.* at 394. Accordingly, government searches of such devices have the potential to be uniquely intrusive.

The extent of the privacy intrusion, however, will depend on the methodology employed by the government agent. "Basic border searches . . . require an officer to manually traverse the contents of the traveler's electronic device, limiting in practice the quantity of information available during a basic search." *Alasaad v. Mayorkas,* 988 F.3d 8, 18 (1st Cir. 2021). "And a basic border search does not allow government officials to view deleted or encrypted files." *Id.* at 19. *See also id.* at 18–19 ("The CBP Policy only allows searches of data resident on the device.").

Accordingly, when it comes to manual cell phone searches at the border, our sister circuits have uniformly held that *Riley* does not require either a warrant or reasonable suspicion. *See*, *e.g.*, *United States v. Xiang*, 67 F.4th 895, 900 (8th Cir. 2023) ("No Circuit has held that the government must obtain a warrant to conduct a routine border search of electronic devices."); *Alasaad v. Mayorkas,* 988 F.3d 8, 18–19 (1st Cir. 2021) ("We . . . agree with the holdings of the Ninth and Eleventh circuits that basic border searches are routine searches and need not be supported by reasonable suspicion."); *United States v. Cano*, 934 F.3d 1002, 1016 (9th Cir. 2019) ("manual searches of cell phones at the border are reasonable without individualized suspicion").

Our sister circuits have differed only as to whether reasonable suspicion is required for a more intrusive forensic search of a cell phone at the border. *Compare*, *e.g.*, *United States v. Touset*, 890 F.3d 1227, 1231 (11th Cir. 2018) ("the Fourth Amendment does not require any suspicion [even] for forensic searches of electronic devices at the border"), *with Cano*, 934 F.3d at 1016 ("we hold that manual searches of cell phones at the border are

reasonable without individualized suspicion, whereas the forensic examination of a cell phone requires a showing of reasonable suspicion").

All we need to decide this case, however, is to adopt the consensus view of our sister circuits and hold that the government can conduct manual cell phone searches at the border without individualized suspicion. After all, the manual cell phone search here produced evidence of child pornography. So if that search was valid, then it's hard to see how that would not justify the subsequent forensic searches for additional evidence of child pornography. And Castillo does not appear to claim otherwise. He argues that the government violated the Fourth Amendment by conducting the manual as well as forensic searches. But he does not claim that the forensic search was invalid even if we find the manual search valid.

We see no reason to disagree with our sister circuits. Accordingly, we hold that no reasonable suspicion is necessary to conduct the sort of routine manual cell phone search at the border that occurred here. We therefore affirm.